# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 13-3478

KURT PROKARYM, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided April 14, 2015)

*Robert V. Chisholm*, *Judy J. Donegan*, and *Michael S. Just*, all of Providence, Rhode Island, were on the brief for the appellant.

*Will A. Gunn*,[1] General Counsel; *Mary Ann Flynn*, Assistant General Counsel; *Thomas E. Sullivan*, Acting Deputy Assistant General Counsel; and *Mark D. Gore*, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, LANCE, and BARTLEY, *Judges*.

LANCE, *Judge*: Veteran Kurt Prokarym appeals, through counsel, a November 7, 2013, decision of the Board of Veterans' Appeals (Board) that, in pertinent part, denied entitlement to an initial disability rating greater than 50% for bilateral plantar fasciitis with pes planus for the period beginning July 26, 2013.[2] Record (R.) at 2-15. On August 28, 2014, the Court, by a single judge decision, affirmed the Board's decision. *Prokarym v. McDonald*, No. 13-3478, 2014 WL 4232343 (Vet. App. Aug. 28, 2014) (memorandum decision). On September 16, 2014, Mr. Prokarym filed a timely motion for a panel decision.

---

[1] On December 18, 2014, Leigh A. Bradley was sworn in as VA's General Counsel.

[2] In addition, the Board granted entitlement to separate 10% disability ratings for left and right foot plantar fasciitis with pes planus for the period prior to July 26, 2013. The Court cannot disturb these favorable findings. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007) ("The Court is not permitted to reverse findings of fact favorable to a claimant made by the Board pursuant to its statutory authority.").

The Court granted Mr. Prokarym's motion for a panel decision on March 2, 2015. *Prokarym v. McDonald*, No. 13-3478, 2015 WL 859059 (Vet. App. Mar. 2, 2015) (per curiam order). After review of the parties' pleadings and the record, the Court's August 28, 2014, memorandum decision will be withdrawn, and this opinion will be issued in its place. For the reasons that follow, the Court will affirm the Board's decision.

## I. BACKGROUND

Mr. Prokarym served in the U.S. Navy from July 1981 to August 1981 and in the U.S. Army from October 1984 to September 2004. R. at 412, 735.

This matter returns to the Court following a July 9, 2012, memorandum decision that, inter alia, vacated, in part, an October 12, 2010, Board decision and remanded the issue of entitlement to an initial disability rating greater than 10% for bilateral plantar fasciitis. *Prokarym v. Shinseki*, No. 11-0218, 2012 WL 2688760 (Vet. App. July 9, 2012) (memorandum decision). In that decision, the Court, relying on the Secretary's concession of error, directed the Board to discuss why it had rated Mr. Prokarym's condition under the diagnostic code (DC) for acquired flatfoot, 38 C.F.R. § 4.71a, DC 5276, and whether other DCs were applicable to his bilateral foot condition. *Id*. at *2.

On May 1, 2013, the Board issued a decision remanding Mr. Prokarym's claim for additional development, including a new medical examination. R. at 16-25. The Board directed the examiner to include findings as to whether Mr. Prokarym's "bilateral plantar fasciitis with pes planus is mild, moderate, or pronounced . . . and whether [his disability] equates to a moderately severe or severe foot injury." R. at 22.

Mr. Prokarym underwent a VA compensation and pension (C&P) foot examination in July 2013. R. at 745-53. The examiner noted that Mr. Prokarym's disability resulted in marked pronation, swelling and pain on use, and extreme tenderness of the plantar surface of his feet. R. at 746. She further noted that Mr. Prokarym had no "characteristic calluses" and that his symptoms were relieved by arch supports. *Id.* The examiner diagnosed Mr. Prokarym with flatfoot, metatarsalgia, and plantar fasciitis, R. at 749, but she stated that Mr. Prokarym had no other foot injuries, R. at 751. Radiographic images taken in May 2010 revealed "[s]table mild loss of the normal plantar arch and minimal degenerative changes." R. at 747-48.

2

In August 2013, the Appeals Management Center issued a rating decision that granted entitlement to an increased disability rating for Mr. Prokarym's foot disability, assigning a 50% evaluation effective July 26, 2013. R. at 735-39. Mr. Prokarym's condition was rated under DC "5299-5276," R. at 738, indicating that his primary diagnosis—plantar fasciitis—was not specifically listed in VA's schedule of ratings for disabilities but was instead rated by analogy using the criteria for acquired flatfoot under DC 5276. *See* 38 C.F.R. §§ 4.20, 4.27 (2014) (explaining the procedure for rating an unlisted disease, injury, or residual condition by analogy). Prior to July 26, 2013, Mr. Prokarym had been assigned a 10% evaluation, also rated under the criteria for flatfoot. *See* R. at 358-65 (February 8, 2005, regional office decision granting entitlement to service connection and assigning initial 10% disability rating).

On November 7, 2013, the Board issued the decision here on appeal. R. at 2-15. In it, the Board discussed the applicability of other DCs pertaining to the feet and concluded that both DC 5276 and DC 5284, for "Foot injuries, other," were potentially applicable. R. at 9. Based on Mr. Prokarym's symptoms, the Board determined that he was entitled to separate 10% disability ratings for each foot under DC 5284 for the period prior to July 26, 2013. R. at 10.

For the period beginning July 26, 2013, the Board noted that Mr. Prokarym had been assigned a 50% disability rating, "the highest schedular rating under [DC] 5276." R. at 11. The Board considered whether Mr. Prokarym's disability warranted separate ratings under DC 5284, but it determined that his foot disability did not "result[] in a 'severe' level of impairment in each foot, as would be required to reach a combined disability rating higher than the 50[%] rating" already assigned under DC 5276. *Id.* This appeal followed.

## II. THE PARTIES' ARGUMENTS

Mr. Prokarym raises a single argument on appeal: he contends that the Board erred by not rating his bilateral foot disability under DC 5284 for the period beginning July 26, 2013. Appellant's Brief (Br.) at 5-9. Specifically, he asserts that the Board's finding that he would not be entitled to a "severe" rating of 30% for each foot under DC 5284 cannot be reconciled with its determination that he is entitled to a single 50% rating for "pronounced" bilateral flatfoot under DC 5276 for the relevant period. *Id.* at 7. Highlighting the Board's decision to grant him separate ratings of 10% for each foot for "moderate" flatfoot under DC 5284 for the period prior to July 26, 2013, he contends

3

that "the ratings under DC 5284 contemplate all of [his] service-connected bilateral foot disabilities and their symptoms." *Id.* at 6. Thus, he argues, "[i]t is incongruous to conclude that the [appellant]'s service-connected bilateral foot disability is 'pronounced' [under DC 5276], which is considered a more severe degree of symptomatology than 'severe,' but does not amount to 'severe' [under DC 5284]." *Id.* at 7. He asks the Court to remand his claim. *Id.* at 9.

The Secretary responds that the Board properly rated Mr. Prokarym under DC 5276 for the period beginning July 26, 2013. Secretary's Br. at 5-7. He also argues that "severe" cannot correspond to the same level of disability under both DC 5276 and 5284, as doing so would result in a situation where "the very same symptomatology" would result in a 30% disability rating under DC 5276 and a 60% disability rating under DC 5284. *Id.* at 16. To hold that "severe" means the same thing under both DCs would, he argues, "lead[] to absurd results and would effectively void portions of the rating schedule." *Id.* He asks the Court to affirm the Board's decision.

## III. ANALYSIS

### A. Meaning of "Severe" under DCs 5276 and 5284

The first question before the Court, and the crux of Mr. Prokarym's argument, is whether a "severe" disability under DC 5276 is equivalent to a "severe" disability under DC 5284. The Court holds that it is not.

"The starting point in interpreting a statute [or regulation] is its language." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993); *see Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) ("The canons of construction of course apply equally to any legal text and not merely to statutes."). Generally, "identical terms within an Act bear the same meaning." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992). However, this "presumption is not rigid and readily yields whenever . . . the subject-matter to which the words refer is not the same in the several places where they are used, or the conditions are different." *Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932). "Thus, '[a] given term in the same statute may take on distinct characters from association with distinct statutory objects calling for different implementation strategies.'" *Breniser v. Shinseki*, 25 Vet.App. 64, 76-77 (2011) (quoting *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007)).

4

Both DC 5276 and DC 5284 use the word "severe," which is not defined in § 4.71a. In the absence of an express definition, words are given their ordinary meaning. *See Terry v. Principi*, 340 F.3d 1378, 1382-83 (Fed. Cir. 2003) (citing *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995). The ordinary meaning of "severe" is "very great [or] intense," NEW OXFORD AMERICAN DICTIONARY 1599 (3d ed. 2010), or "of a great degree," MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/severe (last visited Mar. 27, 2015). It is used throughout the rating schedule, including in DCs 5276 and 5284, to indicate a very great or intense case of the specific listed disability, in order to differentiate between lesser (or sometimes greater) cases of that same disability within the specific DC. *See, e.g.*, 38 C.F.R. § 4.71a, DC 5276 (listing the degrees of compensable flatfoot in descending order from "pronounced" to "mild," with "severe" representing the second greatest degree of flatfoot), DC 5284 (listing the degrees of compensable "other" foot injuries in descending order from "severe" to "moderate"). In other words, "severe" is a degree descriptor specific to the listed disability, and disabilities designated as "severe" in different DCs are not necessarily equally disabling. *See Breniser*, 25 Vet.App. at 76-77.

This construction is borne out by the structure of DCs 5276 and 5284. Under DC 5276, "severe" flatfoot, with "objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated, indication of swelling on use, characteristic callosities," warrants a 20% disability rating for unilateral flatfoot or a single 30% disability rating for bilateral flatfeet. 38 C.F.R. § 4.71a, DC 5276 (2014). In contrast, a "severe" foot injury under DC 5284—which does not include specific criteria—warrants a 30% disability rating, and each foot is rated separately. *Id.*, DC 5284. Thus, a claimant with severe bilateral flatfeet would be entitled to a single 30% rating under DC 5276, while a claimant with severe bilateral foot injuries would be entitled to *separate* 30% disability ratings for each foot under DC 5284.

This difference reflects the Secretary's judgment that a severe foot injury under DC 5284 represents a more disabling condition than severe flatfoot under DC 5276.[3] *See* 38 C.F.R. § 4.1

---

[3]Similarly, the Secretary determined that "severe" unilateral hallux valgus or hallux rigidus warrants a 10% disability rating, whereas "severe" malunion or nonunion of the tarsal or metatarsal bones warrants a 30% disability rating. 38 C.F.R. § 4.71a, DCs 5280, 5281, and 5283. Moreover, the Secretary has likewise not equated "severe" disabilities in other portions of the rating schedule. For example, the Secretary determined that a "severe" ulcer does not result in the same impairment in earning capacity as a "severe" foot injury, *compare* 38 C.F.R. § 4.114, DC 7305 (2014), *with* DC 5284, nor that a "severe" disability of the neck muscles results in the same impairment as a "severe" disability of the muscles supporting the lumbar spine, *compare* 38 C.F.R. § 4.73, DC 5322, *with id.*, DC 5320.

(2014) ("The percentage ratings represent as far as can practically be determined the average impairment in earning capacity resulting from [] diseases and injuries and their residual conditions in civil occupations."). Therefore, guided by "the established principle that a court should '"give effect, if possible, to every clause and or word of a statute,"'" the Court rejects Mr. Prokarym's construction of "severe" in this case. *Moskal v. United States*, 498 U.S. 103, 109 (1990) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)). Contrary to Mr. Prokarym's contention, there is no incongruity in finding his foot disabilities to be "pronounced"—a degree greater than "severe"—under DC 5276 beginning July 26, 2013, but not "severe" under DC 5284 for that same period, because severe bilateral flatfoot is not equivalent to other severe foot injuries. As noted by the Secretary, "the net result of [the a]ppellant's construction would be to reduce the carefully crafted criteria of DC 5276 to nothing more than a guide for the application of DC 5284." Secretary's January 5, 2015, Court-Order Response to Appellant's Motion for Panel Review at 13. The Court simply cannot accept a construction that would render an entire DC superfluous in this manner. *See Moskal*, 498 U.S. at 109.

The Court therefore holds that a "severe" disability under DC 5276 is not equivalent to a "severe" disability under DC 5284. *See Breniser*, 25 Vet.App. at 76-77. Thus, contrary to Mr. Prokarym's arguments, his "pronounced" rating under DC 5276 does not automatically entitle him to a "severe" rating under DC 5284.

To the extent that Mr. Prokarym is challenging the particular disability ratings selected by the Secretary for these specific foot disabilities and their various degrees, the Court is prohibited by statute from reviewing the Secretary's rationale for assigning different disability ratings to severe flatfoot and other severe foot injuries. 38 U.S.C. § 7252(b) ("The Court may not review the schedule of ratings for disabilities . . . or any action of the Secretary in adopting or revising that schedule."); *see also Wingard v. McDonald*, 779 F.3d 1354, 1356-57 (Fed. Cir. 2015) (discussing this Court's inability to review the schedule of ratings for disabilities). Given that the Secretary's choices in this regard are insulated from judicial review by this Court, it cannot second-guess the Secretary's characterization of a severe foot injury under DC 5284 as a more disabling condition than severe flatfoot under DC 5276, nor can the Court invalidate his assignment of particular disability percentage ratings to varying degrees of disability within a specific DC. Put another way, if the Secretary had intended a severe disability under DC 5276 to be equivalent to a severe disability

under DC 5284, he would have, presumably, used the same percentage disability rating, and his decision not to do so is an issue beyond our jurisdiction.[4]

### B. Entitlement to an Increased Disability Rating

Having rejected Mr. Prokarym's argument that his "pronounced" evaluation under DC 5276 automatically entitled him to a "severe" rating under DC 5284, the Court must next address whether the Board erred when it determined that he was not entitled to a disability rating greater than 50%. "[T]he Court may set aside the [Board]'s selection of a DC in a particular case only if such selection is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (quoting 38 U.S.C. § 7261(a)(3)(A)). The Board's assignment of a disability rating, however, is a question of fact, which the Court reviews under the "clearly erroneous" standard. *Johnston v. Brown*, 10 Vet.App. 80, 84 (1997).

Since his initial grant of service connection in 2005, Mr. Prokarym's condition has been rated by analogy under DC 5276. R. at 358-65; *see* 38 C.F.R. §§ 4.20 ("When *an unlisted condition* is encountered it will be permissible to rate under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous." (emphasis added)), 4.27. As Mr. Prokarym's condition was rated by analogy, the Board considered whether other DCs pertaining to foot disabilities were applicable. R. at 9. It determined that both DC 5276 and DC 5284 were potentially applicable to Mr. Prokarym's disability.[5] R. at 9. The Board then made two findings as to the proper disability rating: it noted that Mr. Prokarym had been granted the maximum 50% evaluation under DC 5276, and it determined that he was *not* entitled to separate 30% evaluations, equivalent to "severe" foot injuries, under DC 5284. R. at 11.

---

[4] Mr. Prokarym's motion for panel consideration seems to acknowledge this difference, noting that "regardless of which diagnostic code is at issue, the collective functional impairment of all [his] service-connected bilateral foot disability residuals should be reflected by the *rating*," Appellant's Motion (Mot.) for Panel Decision at 4 (emphasis added).

[5] Although Mr. Prokarym generally asserts that his "disability is not fully contemplated by DC 5276," Appellant's Br. at 5, he cites no symptoms or effects not contemplated by that DC, nor does he provide any other support for this assertion. *See Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that the Court will not entertain undeveloped arguments); *Coker v. Nicholson*, 19 Vet.App. 49, 442 (2006) ("The Court requires that an appellant plead with some particularity the allegation of error so that the Court is able to review and assess the validity of the appellant's arguments."), *rev'd on other grounds sub nom. Coker v. Peake*, 310 F. App'x 371 (Fed. Cir. 2008) (per curiam order).

Relying on the July 2013 C&P examination, the Board explained that, although "the severity of the [appellant]'s bilateral foot disability reaches a pronounced rating under the provisions applicable for bilateral acquired flatfoot, the evidence does not support the conclusion that [his] bilateral plantar fasciitis with pes planus has resulted in a 'severe' level of impairment in each foot" under DC 5284. *Id.* In support of this determination, the Board noted that, although Mr. Prokarym suffered from "foot pain on use and with manipulation, as well as an indication of swelling on use and extreme tenderness of the plantar surface of both feet," he had "no characteristic calluses . . . [or] marked deformity of the foot or lower extremity, *other than pes planus*, causing alteration of the weight bearing line." R. at 11-12 (emphasis added).

In light of this analysis, the Court is not persuaded that the Board clearly erred when it determined that Mr. Prokarym would not be entitled to a "severe" rating under DC 5284 nor that it failed to provide an adequate statement of reasons or bases for that determination. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) ("An appellant bears the burden of persuasion on appeals to this Court."), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table); *Johnston*, 10 Vet.App. at 84; *Allday v. Brown*, 7 Vet.App. 517, 527 (1995). The Board found that the record did not contain evidence of foot symptoms other than those contemplated by DC 5276, R. at 11-12, and Mr. Prokarym has not identified any other foot symptoms that the Board overlooked. *See Hilkert*, 12 Vet.App. at 151. Further, in light of the Board's findings that Mr. Prokarym was entitled to a 50% evaluation under DC 5276 but, in the alternative, *at most* only separate 20% evaluations under DC 5284, the Court is not persuaded that the Board's selection of DC 5276 was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Butts*, 5 Vet.App. at 539 (quoting section 7261(a)(3)(A)). The Court will, therefore, affirm the Board's decision.

## IV. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the Court's August 28, 2014, single judge memorandum decision is WITHDRAWN, and this opinion is issued in its stead. The Board's November 7, 2013, decision is AFFIRMED.