# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-1805

WILLIAM J. TEDESCO, JR., APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 18, 2019                                              Decided August 16, 2019)

*Susan W. Saidel*, with *Yvette Donaldson*, both of Wilmington, Delaware, for the appellant.

*Ronen Z. Morris*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Christopher W. Wallace*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, ALLEN, and MEREDITH, *Judges*.

ALLEN, *Judge*: The appellant, William J. Tedesco, Jr., appeals a March 27, 2018, Board of Veterans' Appeals decision that denied a disability rating greater than 30% for a left knee disability, rated under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5055.[1] This matter was submitted to a panel of the Court principally to address whether reference to "severe painful motion" in the criteria for a 60% rating under DC 5055 is synonymous with "limitation of motion" and, if not, whether limitation of motion may nevertheless be taken into account in assessing the existence of severe painful motion. Given the plain language of DC 5055 and this Court's caselaw interpreting the musculoskeletal diagnostic codes, we hold that limitation of motion and painful motion are distinct concepts, though limitation of motion is a factor that may be considered when evaluating painful motion; thus, remand is warranted for the Board to discuss whether the evidence of record established "severe painful motion" warranting a 60% rating. We also note that the Board must consider the appellant's lay statements when discussing whether a separate rating is warranted for lateral knee instability pursuant to our decision in *English v. Wilkie*, 30 Vet.App. 347 (2018), and

---

[1] The Board also denied an earlier effective date for service connection for the appellant's left knee disability on the basis of clear and unmistakable error (CUE). However, the appellant raises no arguments on this issue, and the Court deems it abandoned. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc).

the cases on which it relied. Therefore, the Court will set aside the March 27, 2018, Board decision and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

The appellant served in the United States Marine Corps from August 1975 to September 1975 and from January 1980 to April 1980. Record (R.) at 4904, 6784. In August 2004, VA awarded service connection for a left knee disability and assigned a 30% disability rating. Secretary's Brief (Br.) at 2.[2] In March 2010, the appellant filed a claim for an increased rating for his left knee disability, R. at 6177, and in October 2010, the regional office continued his 30% evaluation, R. at 6010-14. The appellant filed a Notice of Disagreement in August 2011, R. at 5989, and perfected his appeal to the Board. VA treatment records reflect that, in 2013, he reported experiencing significant pain in both knees and left knee pain "all the time." R. at 2896, 3093. In January 2017, he testified at a Board hearing that he was experiencing knee pain 6 hours a day and relying on a walker to get around. R. at 1766-67.

In its March 2018 decision, the Board found that the appellant's range of motion was "at worst 95 degrees of flexion and 0 degrees of extension." R. at 6. The Board concluded that a "higher or separate [intermediate] rating is not warranted based on limitation of motion." R. at 7. Because the appellant's left knee did not warrant more than a minimum rating for painful motion under the other DCs for limitation of motion, the Board found that no intermediate rating was warranted under those DCs and that it was "more favorable for him to retain his currently assigned 30[%] minimum disability rating" under DC 5055. *Id.* Additionally, the Board noted that it "cannot find that chronic residuals consisting of severe painful motion or weakness in the affected extremity are present such that a disability rating of 60[%] under [DC] 5055 is warranted." *Id.* The Board specifically found that, "while the [appellant] did experience pain in the left knee, his range of motion was not limited to compensable levels." *Id.* The Board observed that VA examiners found moderate weakness and normal strength. *Id.* Thus, the Board concluded that a "disability rating in excess of 30[%] cannot be granted," *id.*, because his disability "did not rise to the level of severe painful motion or weakness," R. at 2. Finally, the Board acknowledged the appellant's

---

[2] The record of proceedings is sparse and does not contain all relevant procedural documents. However, since the parties do not dispute the procedural history of this matter, the Court will rely on their recitation of the facts when necessary.

reports of instability in his left knee but stated that "the only joint stability testing of record was at the VA examinations and showed no instability." R. at 7. The Board concluded that, although the appellant "may experience a feeling that his knee may give way or is unstable, the medical findings regarding instability . . . are more probative." *Id.*

## II. ANALYSIS

The appellant's left knee disability is rated under 38 C.F.R. § 4.71a, DC 5055, for prosthetic replacement of the knee joint. Our analysis begins with a discussion of the relevant rating criteria and whether the Board erred in its application of DC 5055, specifically by equating severe painful motion and limitation of motion. Then we address the appellant's contention that the Board failed to properly consider lay evidence when it denied a separate rating for instability of his left knee. We turn first to the appropriate standard of review at the heart of this matter.

### A. Standard of Review

It is well established that the Court reviews the Board's determination of the appropriate degree of disability for clear error.[3] *See Smallwood v. Brown*, 10 Vet.App. 93, 97 (1997). Additionally, the Court reviews the interpretation of VA regulations, such as DCs, de novo. *See Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006).

### B. Interpretation of DC 5055

DC 5055 provides the following disability evaluations for prosthetic replacement of the knee joint:

> For 1 year following implantation of prosthesis……………………………...100
> With chronic residuals consisting of severe painful motion or weakness in the affected extremity……………………………......................................................60
> With intermediate degrees of residual weakness, pain or limitation of motion rate by analogy to [DCs] 5256, 5261, or 5262.
> Minimum rating……………………………………………………………..30

---

[3] The Court notes that, in his brief, the appellant argues that the Board's decision must be reviewed under the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard and cites caselaw involving the standard of review for CUE. Appellant's Br. at 4 (citing *Jordan v. Principi*, 17 Vet.App. 261 (2003); *Fugo v. Brown*, 6 Vet.App. 40 (1993); *Russell v. Principi*, 3 Vet.App. 310 (1992) (en banc)). The Court notes that the appellant abandoned his CUE claim and that the standard of review he articulates in his brief is incorrect.

38 C.F.R. § 4.71a, DC 5055 (2019). DC 5256 provides a rating for ankylosis of the knee, DC 5261 pertains to limitation of extension of the leg, and DC 5262 provides a rating for impairment of the tibia and fibula.

To determine the meaning of DC 5055, we look first to "the language of the regulation, the plain meaning of which is derived from its text and its structure." *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015); *see Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993); *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017). If the plain meaning of the regulation is clear from its language, then that meaning controls, and "that is 'the end of the matter.'" *Tropf*, 20 Vet.App. at 320 (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)). When we assess the meaning of a regulation, we should not read its words in isolation but rather in the context of the regulatory scheme and structure. *King v. Shinseki*, 26 Vet.App. 484, 488 (2014). Furthermore, when we interpret a regulation, we must give its words "their 'ordinary, contemporary, common meaning,'" absent an indication that the words "bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431 (2000) (quoting *Walters v. Metro. Ed. Enters., Inc.*, 519 U.S. 202, 207 (1997)); *see Prokarym v. McDonald*, 27 Vet.App. 307, 310 (2015).

In this matter, the appellant argues that the Board conflated severe painful motion with limitation of motion, which is not among the 60% rating criteria under DC 5055. Appellant's Br. at 5. He also argues that the Board did not discuss whether the evidence of record showed that he had severe painful motion to warrant a 60% rating. *Id.* at 7. He points to evidence of "significant pain in both knees," R. at 2896, and "pain in [the] left knee all the time," R. at 3093, as well as his Board hearing testimony of suffering knee pain 6 hours a day and of needing to use a walker, R. at 1766-67.

The Secretary counters that the Board did not err in its analysis of the appellant's left knee disability because the Board was required to consider limitation of motion in deciding the appropriate rating under DC 5055. Secretary's Br. at 6. The Secretary asserts that a disability rating is assigned based on the loss of earning capacity and because a knee becomes impaired most commonly by limitation of motion, it follows that in evaluating the disability level caused by pain, limitation of motion is a critical factor to be considered. *Id.* at 7-8; Oral Argument (O.A.) at 29:50-30:40, *Tedesco v. Wilkie*, U.S. Vet. App. No. 18-1805 (oral argument held July 18, 2019), http://www.uscourts.cavc.gov/oral_arguments_audio.php.

We begin with common ground about how DC 5055 operates. There is no dispute that a veteran who undergoes a knee replacement surgery receives a 100% rating for the year following that surgery. Thereafter, all agree, a minimum rating of 30% is assigned, regardless of residuals. As the Secretary noted at oral argument, compensable residuals are presumed without the need to establish actual functional limitation. O.A. at 31:32-33:38. If the veteran experiences residual weakness, pain, or limitation of motion consistent with a rating between 30% and 60% under DCs 5256, 5261, or 5262, then a higher rating is assigned by analogy. This "intermediate" level of disability is consistent with a 40% or 50% rating. *See* O.A. at 10:02-11:03; 33:40-34:00. Under these DCs, with only a single exception, the highest rating that can be assigned is 50%, bolstering the intermediate rating concept.[4] In other words, the 40% and 50% ratings by analogy under DC 5256, 5261, and 5262 are "intermediate" in the sense that they lie between the minimum 30% rating and the 60% rating under DC 5055. If a veteran's condition results in "severe painful motion or weakness," then a 60% rating is assigned.

With this structure in mind, we now focus on the meaning of the 60% criteria. It is clear from the plain language of DC 5055 that severe painful motion and limitation of motion are distinct concepts. First, at the 60% rating level, the DC specifically refers to "severe painful motion" while it does not mention limitation of motion. 38 C.F.R. § 4.71a, DC 5055. At the "intermediate" level, DC 5055 expressly differentiates between limitation of motion and pain, listing the two as alternative evaluation criteria. *Id.* ("With intermediate degrees of residual weakness pain, *or* limitation of motion [rate by analogy]."); *see McDowell v. Shinseki*, 23 Vet.App. 207, 220 (2009) (regulation's use of the disjunctive "or" signified "alternative components"), *aff'd*, 396 F. App'x 691 (Fed. Cir. 2010). Thus, it is clear from the rating criteria that the Secretary knew how to use the specific phrase "limitation of motion" and would have utilized this phrase at the 60% level if that was what he had intended. Instead, a different phrase appears – "severe painful motion" – which must mean something different. There is no reason here to assume that *different* phrases in a single regulation actually mean the *same* thing in operation. *See Prokarym*, 27 Vet.App. at 310 ("Generally, 'identical terms within an Act bear the same meaning.'" (quoting *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992))).

---

[4] DC 5256 provides the exception, a 60% rating for extremely unfavorable ankylosis. However, the appellant does not argue that his condition results in ankylosis, warranting a 60% rating on that basis.

This Court has also held that painful motion and limitation of motion are distinct concepts. *See Mitchell v. Shinseki*, 25 Vet.App. 32, 36-43 (2011). The Court noted that pain "may result in functional loss . . . if it limits the ability 'to perform the normal working movements of the body with normal excursion, strength, speed, coordination[, or] endurance.'" *Id.* at 38 (quoting 38 C.F.R. § 4.40 (2011)); *see Southall-Norman v. McDonald*, 28 Vet.App. 346, 350-54 (2016) (holding that the plain language of § 4.59 applies regardless of whether a disability is being evaluated based on a limitation-of-motion DC). We have held that a limitation-of-motion DC that is based on objective range-of-motion testing, such as DC 5261, which is specifically referenced in DC 5055, does not preclude a higher rating based on functional loss due to painful motion. *DeLuca v. Brown*, 8 Vet.App. 202, 206-07 (1995). Additionally, in *Burton v. Shinseki*, the Court held that the Board provided inadequate reasons or bases by relying on a medical examination that recorded a veteran's range of motion and subjective complaints of pain on motion without addressing whether he experienced actual pain on motion and failed to address 38 C.F.R. § 4.59. 25 Vet.App. 1, 6 (2011), *aff'd*, 479 F. App'x 978 (Fed. Cir. 2012). Thus, even if we had doubt about the meaning of DC 5055 based on its plain language, our precedential decisions would compel a reading that distinguished painful motion and limitation of motion.

In addition, VA's regulations also support a distinction between limitation of motion and severe painful motion. 38 C.F.R. § 4.45 provides several factors to consider when assessing the level of disability of a joint. Among those listed, "[l]ess movement than normal" and "[p]ain on movement" are listed separately. Furthermore, 38 C.F.R. § 4.59 specifically provides that "painful motion is an important factor of disability" and that "actually painful . . . joints [are] . . . entitled to at least the minimum compensable rating for the joint." This provision exists in addition to those that provide for objective limitation-of-motion testing, which further indicates the distinction between severe painful motion and limitation of motion.

Therefore, to the extent that the Board in this matter substituted a requirement of limitation of motion for the severe-painful-motion analysis contemplated by DC 5055, the Board erred. *See Pernorio v. Derwinski*, 2 Vet.App. 625, 628 (1992) (finding Board error where it misapplied the terms of the applicable DC). This is not to say that the Board is precluded from considering objective tests for limitation of motion in evaluating service-connected residuals of a knee replacement under DC 5055, but to adequately assess the degree of painful motion under DC 5055, the Board must do more than merely cite those test results and state the corresponding evaluation

under the pertinent limitation-of-motion DC. Simply stated, limitation of motion is but one factor when assessing the disability commensurate with "severe painful motion."

Here, in assessing his entitlement to an intermediate rating under DC 5055, the Board noted the appellant's increased pain during flareups, which he had reported at the June 2016 VA examination, and that, under the limitation-of-motion DCs, he would be entitled to a minimum rating for painful motion under 38 C.F.R. § 4.59. R. at 7. However, in evaluating his entitlement to a 60% rating, the Board did not assess the severity of that painful motion when it found that though the appellant "did experience pain in the left knee, his range of motion was not limited to compensable levels." *Id.* The Board found that severe painful motion was not present because the appellant's "range of motion was not limited" by pain. *Id.* This is not what DC 5055 requires for a 60% rating; it is severe painful motion, not limitation of motion, that is required.

Accordingly, the Court concludes that the Board provided inadequate reasons or bases to assess whether a 60% rating was warranted under DC 5055. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995) (stating that, to comply with the reasons-or-bases requirement set forth in 38 U.S.C. § 7104(d)(1), the Board must analyze the credibility and probative value of evidence, account for evidence it finds persuasive or unpersuasive, and provide reasons for its rejection of material evidence favorable to the claimant), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990) (holding that the Board must support its material findings of fact and law with an adequate statement of reasons or bases that enables the claimant to understand the precise basis for that determination and facilitates review in this Court). Remand is therefore warranted so that the Board can properly apply the evaluation criteria of DC 5055 to the appellant's claim. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is warranted "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

As a final matter, the Court notes, without deciding, that the Board may need to explain what it understands "severe" to mean as it is used to describe painful motion and weakness at the 60% disability level. This Court has made clear that the Board cannot base its rating decisions on undisclosed standards. *See Johnson v. Wilkie*, 30 Vet.App. 245, 254-55 (2018). Doing so amounts to nothing more than the Board saying that a veteran is not entitled to certain benefits "'because I say so.'" *Cantrell v. Shulkin*, 28 Vet.App. 382, 392 (2017) (quoting *Hood v. Brown*, 4 Vet.App. 301, 303 (1993)); *see Johnson*, 30 Vet.App. at 255.

*C. A Separate Rating for Lateral Knee Instability*

The appellant also argues that in denying a separate disability rating under 38 C.F.R. § 4.71a, DC 5257, the Board failed to properly consider his reports of lateral knee instability. Appellant's Br. at 12-13. Instead, he contends, the Board required objective evidence of such instability, something the language of DC 5257 does not require. *Id.* at 13. The Secretary argues that the Board simply found the objective evidence more probative, which was proper and consistent with the Board's role as factfinder. Secretary's Br. at 9.[5]

In *English*, which was decided after the Board's decision in this matter, the Court held that the Board cannot categorically favor objective medical evidence over lay evidence when making a rating determination under DC 5257. 30 Vet.App. at 352-53. *English* extended the Court's holding in *Petitti*, 27 Vet.App. at 427, specifically to DC 5257. In *Petitti*, the Court held that when a "regulation does not speak to the type of evidence required . . . [it] certainly does not, by its terms, restrict evidence to 'objective' evidence." *Id.*

Here, the Board noted the appellant's reports of feeling instability in his left knee but found the medical findings of no instability more probative. R. at 7. The Board fails to explain why the medical findings are more probative, other than to assert that the "specific medical tests . . . are designed to reveal instability . . . of the joints." *Id.* Thus, the Board's explanation appears to rely on an understanding that medical evidence is inherently more probative under DC 5257, which this Court has rejected. *English*, 30 Vet.App. at 352-53 ("[N]othing in DC 5257 provides that objective medical evidence is required or is to be favored over lay evidence."). Therefore, in light of the Court's holdings in *Petitti* and *English*, remand is required for the Board to provide an adequate statement of reasons or bases for finding a separate rating under DC 5257 for instability unwarranted. *See Caluza*, 7 Vet.App. at 506; *Gilbert*, 1 Vet.App. at 56-57.

---

[5] At oral argument, the Secretary's counsel argued that the Board committed legal error when it found that a separate rating for instability under DC 5257 could be awarded. He argued that a separate instability rating is not allowable when a knee disability is rated under DC 5055 because to allow such a rating would constitute improper pyramiding. *See* O.A. at 52:04-56:06. The Court declines to address this argument because the Secretary did not raise it in his brief. *See Norvell v. Peake*, 22 Vet.App. 194, 201 (2008) (This Court has "repeatedly discouraged parties from raising arguments that were not presented in an initial brief to the Court."), *aff'd sub nom. Norvell v. Shinseki*, 333 F. App'x 571 (Fed. Cir. 2009); *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1263 (11th Cir. 2004) ("A party is not allowed to raise at oral argument a new issue for review."); *Tarpley v. Greene*, 684 F.2d 1, n.17 (D.C. Cir. 1982) ("Clearly, oral argument on appeal is not the proper time to advance new arguments or legal theories."). The Court advances no view on the Board's position on a separate rating for instability in conjunction with his left knee rating under DC 5055.

*D. Summary*

In sum, remand is warranted for the Board to consider whether the evidence of record supports a 60% rating under DC 5055 based on severe painful motion, which is a determination that is separate from, though may include consideration of, limitation of motion. The Board must also consider whether a separate rating under DC 5257 is appropriate taking into account his lay reports of instability.

On remand, the appellant is free to submit additional evidence and argument, including the arguments raised in the briefs to this Court, and he has 90 days to do so from the date of VA's postremand notice. *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order); *see Clark v. O'Rourke*, 30 Vet.App. 92, 97 (2018). The Board must consider any such additional evidence or argument submitted. *Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board must also proceed expeditiously. 38 U.S.C. § 7112.

### III. CONCLUSION

After consideration of the parties' briefs, oral arguments, the record on appeal, and the governing law, the Court SETS ASIDE the March 27, 2018, Board decision and REMANDS this matter for further proceedings consistent with this opinion.