# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-2154

RODNEY WRIGHT, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided August 4, 2023)

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the brief for the appellant.

*Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Megan C. Kral*, Deputy Chief Counsel; and *James M. Carlson*, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and PIETSCH and MEREDITH, *Judges*.

MEREDITH, *Judge*: The appellant, Rodney Wright, appeals through counsel[1] a March 5, 2020, Board of Veterans' Appeals (Board) decision that denied him entitlement to an additional allowance for dependents for his daughter on the basis of her full-time attendance at an approved educational institution. Record (R.) at 2-10. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). In November 2021, this matter was referred to panel to address the following question: When a child of a totally disabled veteran exhausts his or her dependents' educational assistance (DEA) benefits under chapter 35, title 38, U.S. Code, before finishing a chosen "program of education or special restorative training," does 38 U.S.C. § 3562[2] forever preclude the disabled veteran parent from

---

[1] At the time the appellant filed his March 2020 Notice of Appeal, he was self-represented. In November 2021, however, this matter was referred to a panel of the Court and the appellant retained current counsel.

[2] Section 3562 provides in part that "[t]he commencement of a program of education or restorative training under [chapter 35] shall be a bar to . . . increased rates, or additional amounts, of compensation . . . because of such a person."

again receiving, under 38 U.S.C. § 1115,[3] a dependent allotment based on that child? For the following reasons, the Court finds that it does, and therefore we will affirm the Board's decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from June to October 1990. R. at 2580. In December 2014, a VA regional office (RO) granted a total disability rating based on individual unemployability due to service-connected depressive disorder, fibromyalgia, and residuals of a traumatic brain injury. R. at 6580-86. The RO also granted the appellant basic eligibility for DEA benefits. R. at 6581-82. The record reflects that VA adjusted the appellant's compensation to account for his daughter between November 1, 2011, when the appellant established her as his dependent, and April 18, 2015, when his daughter turned 18. R. at 6599.

VA awarded the appellant's daughter DEA benefits, effective in August 2015. R. at 6072; Secretary's Oct. 15, 2021, Response to Sept. 8, 2021, Court Order, at 26. In February 2016, the RO notified the appellant that, as of August 2015, his daughter would no longer be considered his dependent for purposes of a dependency allotment under section 1115 because she was over 18 and receiving DEA benefits. R. at 5922. In June 2018, the appellant filed VA Form 21-674, Request for Approval of School Attendance, on behalf of his daughter, who he indicated began her college course of study in August 2015. R. at 5466-69. Two months later, the RO reiterated that the appellant's daughter was no longer his dependent for VA purposes. R. at 5363. Later in August 2018, he advised VA that, although his daughter was over 18 and had exhausted her DEA benefits, she was still a full-time student. R. at 5357. He asked that VA "keep her on the award through [her] expected graduation date" in June 2019. *Id.*

In a November 2018 letter, VA advised the appellant that, "[o]nce a child has opted for [c]hapter 35 benefit[s], that choice is final. [VA] cannot add [her] back to the award as a dependent." R. at 2551. The appellant filed a Notice of Disagreement with that decision, R. at 2539-40, and ultimately appealed to the Board, R. at 451-55. The Board issued the decision on

---

[3] Pursuant to section 1115, a veteran who is rated at least 30% disabled is entitled to an additional monthly allowance for each dependent, including a spouse or a child. The term "child" is defined in part as "a person who is unmarried and . . . who, after attaining the age of [18] years and until completion of education or training (but not after attaining the age of [23] years), is pursuing a course of instruction at an approved educational institution." 38 U.S.C. § 101(4)(A)(iii) (2018 & Supp. III 2022); *see* 38 U.S.C. § 3501(a)(2) (for purposes of DEA, expanding the term "child" to include married individuals and individuals older than 23 years).

appeal in March 2020, relying on section 3562 to find that the appellant's daughter could not be reinstated as his dependent. R. at 2-10. This appeal followed.

## II. ANALYSIS

### A. Parties' Arguments

#### 1. Appellant[4]

The appellant argues that the Board misinterpreted sections 1115 and 3562 and, as a result, erred as a matter of law when it relied on 38 C.F.R. § 21.3023[5] to deny him the dependent benefits to which he was entitled under section 1115. Appellant's Brief (Br.) at 4-5. He contends that, under the correct interpretation of section 1115, "the fact that [his] daughter was in full time attendance at an approved educational institution for the period from August 2015 to May 2018 was the [only] criteria for [his] entitlement under law to receipt of and entitlement to dependency compensation for his daughter." *Id.* at 5 (emphasis omitted). He further asserts that the Board made two favorable factual findings—(1) his daughter's eligibility for DEA benefits was triggered by his total and permanent disability, and (2) his daughter received DEA benefits from August 2015 to May 2018—and that these findings entitled him to dependent benefits for his daughter under section 1115(1)(F) for the period during which his daughter was older than age 18 but younger than age 23, had not completed her education, and was pursuing a course of instruction at an approved educational institution. *Id.* at 6-7.

Turning to section 3562, the appellant argues that the Board misinterpreted the statute as pertaining to benefits payable to *him*, rather than to his *daughter*. *Id.* at 9. He asserts that a dependent applies for chapter 35 benefits, and those benefits are payable only to the dependent, while the disabled veteran applies for dependent benefits under section 1115(1)(F), and those benefits are payable only to the veteran. *Id.* at 9-10. In other words, he contends, "[c]orrectly interpreted, [section] 3562 . . . only refers to subsequent payments to the dependent receiving benefits and not to benefits payable to anyone else." *Id.* at 9.

---

[4] After the appellant retained counsel, counsel moved for leave to file a new brief, which the Court granted. Thereafter, the appellant and the Secretary filed new briefs, and the appellant filed his reply brief. In reaching this decision, the Court has not considered the arguments presented in the appellant's informal brief, which he filed before he retained counsel.

[5] This regulation provides, in pertinent part, that "[a]n election of educational assistance either before or after the age of 18 is a bar to subsequent payment or increased rates . . . of . . . compensation . . . on account of the child based on school attendance on or after the age of 18 years." 38 C.F.R. § 21.3023(a)(1) (2023).

Because the Board misinterpreted sections 1115 and 3562, the appellant argues, the Board erred as a matter of law in applying § 21.3023 to deny his claim for an additional allowance for a dependent. *Id.* at 10. In this regard, he contends that "[n]othing in the unambiguous language of § 21.3023 imposes criteria which relate to [his] entitlement to receipt of additional dependency compensation for his daughter . . . under the provisions of [section] 1115." *Id.* at 10-11. In sum, his argument is this: "Congress in [section] 1115 unambiguously intended to provide additional compensation to the veteran for his dependents when . . . they are attending school[, while] Congress in [c]hapter 35 . . . unambiguously intended to provide educational benefits to the dependents of veterans." *Id.* at 13. He also briefly asserts that § 21.3023 is "undebatably inconsistent" with Congress's intent. *Id.* at 13-14.

Finally, the appellant argues that § 21.3023(c) "unambiguously requires that the election called for 'must be submitted to VA in writing' by the child," and here "[t]here is no such election in the record of proceedings." *Id.* at 15. Accordingly, the appellant contends, neither he nor his daughter made an election, and the Board "conjured up an election which was never made," and, as a result, VA "unlawfully terminated [the] dependent benefits to which he was entitled under [section] 1115." *Id.*

## 2. *Secretary*

The Secretary first contends that, under section 3562, "the use of DEA benefits under [c]hapter 35 by an eligible person is a bar to the continued payment of two types of benefits," specifically, "the subsequent payment *to* an eligible person over age eighteen who is pursuing a course in an educational institution of compensation, [dependency and indemnity compensation (DIC)], and pension benefits that are based on the death of a parent," *see* 38 U.S.C. § 3562(1); and "the subsequent payment of increased rates or additional amounts of compensation, DIC, or pension *because of* an eligible person . . . [,] whether that person's eligibility for DEA benefits is based on the death of a parent or the total permanent disability of a parent," *see* 38 U.S.C. § 3562(2). Secretary's Br. at 7-8. In the Secretary's view, subsection (2) of section 3562 refers to "the increased compensation rates payable under [section] 1115" based on the circumstances of the dependent. *Id.* at 8. Finally in this respect, the Secretary asserts that § 21.3023(a)(1) bars "subsequent payment or increased rates or additional amounts of compensation on account of the child based on school attendance on or after the age of 18 years" when there is an "election of educational assistance either before or after the age of 18 years," and he notes that 38 C.F.R.

4

§ 3.667(f)(1) also provides that pension, compensation, and DIC may not be authorized after a child has elected to receive DEA benefits. *Id.*

Substantively, the Secretary argues that the Board did not err in denying the appellant an additional allowance for a dependent for his daughter, explaining that "[t]he salient facts here are that [the appellant's daughter] is a 'child' under the meaning of [section] 101(4)(A)(iii) and that she was in receipt of [c]hapter 35 DEA [b]enefits." *Id.* at 9. He further asserts that the Board did not err in concluding that the appellant's daughter's use of chapter 35 benefits is a bar to the appellant receiving the "increased compensation benefits available to disabled veterans with dependent children," because section 3562 contains an explicit bar and § 21.3023 also imposes a "similar bar." *Id.* at 9-10.

Further, the Secretary argues that the appellant's focus in his opening brief on section 3562(1) is misplaced because that subsection pertains to subsequent payments *to* the eligible person based on the death of the veteran, and "no benefits here are related to a veteran's death, as the veteran here is alive and is the appellant in the current litigation." *Id.* at 11. The Secretary states that the Board's decision was based on section 3562(2), which concerns compensation paid "*because of* an eligible person, to include when the person's eligibility is based on the total permanent disability of the parent," and which the appellant does not discuss. *Id.* at 12. The Secretary therefore urges the Court not to consider the appellant's argument regarding subsection (1). *Id.* at 12-13 (citing *Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006)).

Next, the Secretary rejects the appellant's assertion that the receipt of chapter 35 benefits is the criterion for establishing entitlement to an additional allowance for a dependent for his daughter under section 1115(1)(F). *Id.* at 13-14. In that regard, the Secretary explains as follows:

> On the one hand, Congress provided that veterans with disability ratings of 30% or above who have children over age [18] who are pursuing a course of instruction are entitled to additional monthly compensation. 38 U.S.C. § 1115[(1)](F). On the other hand, Congress specified that payment of such additional amounts is prohibited if a veteran's child elects to use [c]hapter 35 DEA benefits. *See* 38 U.S.C. § 3562. . . .
>
> Thus, under the provisions of sections 1115 and 3562, the scenario under which [the a]ppellant could have continued to receive additional compensation payments because of [his daughter] was one in which [his daughter] pursued a course of instruction at an approved educational institution but did not—for whatever reason—elect to use [c]hapter 35 DEA benefits.

*Id.* at 14. The Secretary notes that this interpretation of the relationship between sections 1115 and 3562 "gives meaning to all the relevant provisions" of both statutes, while the appellant's interpretation would render subsection (2) of section 3562 meaningless. *Id.* at 14-15.

The Secretary next contends that the appellant's argument that § 21.3023 is inapplicable is based on an incomplete reading of the regulation. *Id.* at 15. In fact, the Secretary avers, the regulation "is unambiguous in prohibiting payments under [section] 1115 once a dependent child receives [c]hapter 35 DEA benefits." *Id.* at 16. Moreover, the Secretary urges the Court to decline to address any suggestion by the appellant that the regulation is inconsistent with the statute given the undeveloped nature of that argument. *Id.*

Finally, addressing the appellant's suggestion that neither he nor his daughter ever elected chapter 35 benefits, the Secretary avers that this is "inconsistent with the record" and "with the arguments [the a]ppellant's counsel advanced in the opening brief." *Id.* He therefore asserts that the argument is not "discernable or coherent," and the Court should not address it. *Id.*

### 3. Reply Brief

The appellant responds first that "[t]he provisions of [section] 1115 are not affected by a dependent's entitlement to educational benefits." Reply Br. at 1. He asserts that the bars to payment in section 3562 "refer[] to [Congress's] intent to bar duplicative payments to the survivors[] and dependents[] of veterans." *Id.* at 2 (emphasis omitted). He maintains that the bars imposed by section 3562 are directed to the "'eligible person,'" not the disabled veteran. *Id.* at 7 (quoting Secretary's Br. at 12); *see id.* at 5-9. Further, he characterizes the Secretary's distinction between subsections (1) and (2) of section 3562 as "quibbles," arguing that "[n]either part—nor[,] in fact[,] any part of [section] 3562—refers to the receipt of dependent benefits being paid to veterans under [section] 1115." *Id.* at 6.

The appellant next argues that his benefits under section 1115 "were not increased; they were his proper benefits until terminated by VA." *Id.* at 7. Finally, the appellant rejects the Secretary's argument that § 21.3023 unambiguously prohibits payments under section 1115 once a child elects chapter 35 benefits, noting that the regulation does not refer to section 1115, and in fact, the bars referred to are conditioned on the election of educational assistance. *Id.* at 10 (citing 38 C.F.R. § 21.3023(a)(1) (2022)). He asserts that both section 3562 and § 21.3023 bar the *dependent*, not the *veteran*, from seeking increased rates of payment if the dependent uses chapter 35 benefits. *Id.* at 10-11.

6

## B. Board Decision

Here, the Board found that the appellant's daughter's "election [of chapter 35 benefits] serves as a total bar [to] the [appellant] receiving any additional dependency compensation" for her, even when she had exhausted her chapter 35 benefits, was still under age 23, and was still attending a course of study at an approved educational institution. R. at 4. The Board stated that "Congress was clear . . . in its intention that [chapter 35] benefits were not unlimited and that the election of a child to receive those benefits was not without consequence to other benefits," including "increased rates[] or additional amounts[] of compensation 'because of such a person.'" R. at 4-5 (quoting 38 U.S.C. § 3562). The Board noted that section 3562's implementing regulation, § 21.3023, provides that an "'election of educational assistance either before or after the age of 18 . . . is a bar to subsequent payment or increased rates or additional amounts of pension, compensation[,] or [DIC] on account of the child based on school attendance on or after the age of 18.'" R. at 5 (quoting 38 C.F.R. § 21.3023(a)(1) (2021)). The Board concluded that the regulation "is perfectly clear and directs the Board as a matter of law to deny the [appellant's] claim." *Id.*

The Board then addressed the arguments raised by the appellant before the Agency. R. at 5-7. In that regard, the Board acknowledged the appellant's assertion that the statute and regulation prohibit only duplication or simultaneous payment of benefits and do not prevent payments on behalf of a dependent who has exhausted chapter 35 benefits. R. at 5-6. The Board found, however, that his arguments were unavailing in light of the unambiguous language of the statute and regulation. R. at 5-7.

## C. History of Relevant Statutory Provisions

As indicated above, the current dispute centers principally on two statutory provisions—section 1115 and section 3562. Here, the Court will set forth the legislative history of those statutes, which informs the analysis that follows. *See Casey v. Wilkie*, 31 Vet.App. 260, 265 (2019) (citing *Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018), for the proposition that considering the purposes behind a statutory scheme is a useful check on a court's interpretation of a specific statutory provision).

### *1. Hearings*

Section 3562 dates back to the Korean conflict, when Congress undertook a comprehensive assessment of the compensation and education benefits available to the surviving spouses and children of deceased military personnel. *See, e.g.*, *Compensation and Pension Bills for Veterans*

*and Their Dependents*: *Hearings on Bills Providing Benefits for Service-Connected and Non-Service-Connected Veterans and Their Dependents Before the Subcomm. on Comp. & Pension of the H. Comm. on Veterans' Affs.*, 83d Cong. 4499 (1954); H.R. Res. 35, 84th Cong. (1955) (enacted) (creating a select committee to conduct an investigation and study of the benefits provided under federal law for the surviving dependents of deceased members and former members of the Armed Forces); *Providing Educational Assistance for Children of Men Who Died in World War II and Korean Conflict: Hearings on Bills Providing Educational Assistance to Children of Men Who Lost Their Lives in World War II or the Korean Conflict Before the H. Comm. on Veterans' Affs.*, 84th Cong. 3185 (1956) [hereinafter *March 1956 Hearings*]. Of note, one bill under consideration was intended to create an educational program for children of deceased servicemembers and contained this provision, titled "Nonduplication of Benefits":

> Notwithstanding the proviso to paragraph VI, Veterans Regulation Numbered 10, as amended, and the proviso to section 3 (c), Public Numbered 484, Seventy-third Congress, as amended, no death compensation under the laws administered by the Veterans' Administration[6] shall be payable to, or because of, any person over the age of eighteen years *for any period during which an educational assistance allowance is payable under this Act*.

*March 1956 Hearings* at 3252 (quoting H.R. 3589, 84th Cong. § 405(a) (1955)) (emphasis added). In providing technical assistance, a representative from VA testified that the "provision against duplication of benefits is sound," but the bill would "require the discontinuance of additional compensation during periods when an educational assistance allowance is payable and the reinstatement of such compensation benefits during periods when training is temporarily interrupted." *Id.* at 3228. The representative therefore suggested changes to the provision to "reduce the number of amendatory actions which [VA] would be required to take." *Id.*

Other bills on the agenda in March 1956 included a different provision addressing the "[n]onduplication of [b]enefits":

> The commencement of a program of education or special restorative training under this Act shall be a bar to subsequent payments by reason of the proviso to paragraph VI, Veterans Regulation Numbered 10, as amended, or the proviso to section 3 (c), Public, Numbered 484, Seventy-third Congress, as amended, of compensation or pension to an eligible person over the age of eighteen, or of increased rates, or additional amounts, of compensation or pension because of such a person.

---

6 Effective March 15, 1989, the Veterans' Administration was elevated to a Cabinet-level agency and renamed as the Department of Veterans Affairs. Department of Veterans Affairs Act, Pub. L. No. 100-527, §§ 2, 18, 102 Stat. 2635 (1988). For ease of reference, the Court will refer to both as VA.

*March 1956 Hearings* at 3216 (quoting H.R. 9929, 84th Cong. § 502(a) (1956)); *see id.* at 3192, 3207-08. An identical provision was included in bills that were the subject of a Senate hearing in May 1956. *War Orphans Educational Assistance Act of 1956: Hearing on S. 3431 and H.R. 9824 Before the Subcomm. on Veterans' Affs. of the S. Comm. on Lab. & Pub. Welfare*, 84th Cong. 8, 17 (1956) (quoting S. 3431, 84th Cong. § 502(a) (1956), and H.R. 9824, 84th Cong. § 502(a) (1956)) [hereinafter *May 1956 Hearing*].

At that hearing, a VA representative explained that, under then-existing law, "the Government . . . sought to meet its obligations to the dependents of persons who have died from injury or disease incurred in or aggravated by military . . . service by . . . monetary benefits in the form of death compensation," which payments could continue for "children between the ages of 18 and 21 who are attending approved schools." *Id.* at 24-25 (statement of T. F. Daley, VA Associate General Counsel for Legislation). The VA representative further explained that section 502 would "avoid duplication of benefits and would bar the receipt of payments under the existing compensation or pension programs after the child is 18 years of age once education or training is commenced under the proposed program." *Id.* at 25. VA noted, however, that the provision was "directed toward the specific provisions of existing law and, while presently adequate to accomplish the desired purpose," could be "rendered partially ineffective by the enactment of" then-pending bills, including "the survivor's bill, [that] would establish a death benefit known as [DIC] . . . which[,] like the existing compensation and pension benefits, would continue past the age of 18 years in case of school attendance." *Id.* The VA representative offered Congress assistance in fixing this "purely technical" problem. *Id.*

### 2. War Orphans' Educational Assistance Act of 1956

Later that year, Congress enacted the War Orphans' Educational Assistance Act of 1956, Pub. L. No. 84-634, 70 Stat. 411. The purpose of this law was to "provid[e] opportunities for education to children whose education would otherwise be impeded or interrupted by reason of the death of a parent from a disease or injury incurred or aggravated in the Armed Forces during World War I, World War II, or the Korean conflict," and to "aid[] such children in attaining the educational status which they might normally have aspired to and obtained but for the death of such parent." Pub. L. No. 84-634, § 101, 70 Stat. at 411. The law provided up to 36 months of education benefits to an "eligible person," which Congress defined as "a child of a person who died of a disease or injury incurred or aggravated in line of duty in the active service in the Armed

Forces during World War I, World War II, or the Korean conflict." *Id.* § 102(a)(4), 70 Stat. at 411; *see id.* § 202(a), 70 Stat. at 412. Further, the Act included the following provision, titled "Nonduplication of Benefits":

> (a) The commencement of a program of education or special restorative training under this Act shall be a bar to subsequent payments of compensation or pension under any law administered by the Veterans' Administration based on the death of a parent to an eligible person over the age of eighteen by reason of pursuing a course in an educational institution, or of increased rates, or additional amounts, of compensation or pension under any law administered by the Veterans' Administration because of such a person.

> (b) No educational assistance allowance or special training allowance shall be paid on behalf of any eligible person under this Act for any period during which such person is enrolled in and pursuing a course of education or training paid for by the United States under any provision of law other than this Act, where the payment of an allowance would constitute a duplication of benefits paid from the Federal Treasury to the eligible person or to his parent or guardian on his behalf.

*Id.* § 502, 70 Stat. at 420. Notably, the enacted version of the legislation reflects Congress's decision to bar payments under "any law administered by [VA]," rather than under specific provisions of law, as Senate Bill 3431 had done, *see May 1956 Hearing* at 8, as well as Congress's adoption of the phrase "commencement of a program," but not "any period during which an educational assistance allowance is payable under this Act," *March 1956 Hearings* at 3252.

### 3. Servicemen's and Veterans' Survivor Benefits Act

Several months later, Congress also enacted the Servicemen's and Veterans' Survivor Benefits Act, which created VA's DIC program. Pub. L. No. 84-881, §§ 201-10, 70 Stat. 857, 862-68 (1956). At that time, the program provided monthly compensation to the "widow, children, and dependent parents" of an individual who "dies on or after January 1, 1957[,] . . . from disease or injury incurred or aggravated in line of duty . . . or . . . from a disability compensable under the law administered by [VA]." *Id.* § 201, 70 Stat. at 862. If a surviving spouse had children under the age of 18, the monthly payment to the spouse was higher than for a spouse with no children. *Id.* § 202(b), 70 Stat. at 862. For a child between the ages of 18 and 21 who was "pursuing a course of instruction at an approved educational institution," DIC would be "paid monthly to each such child, concurrently with the payment of [DIC] to the widow, in the amount of $35." *Id.* § 204(c),

70 Stat. at 863. In other words, if an adult child was attending college, both the surviving spouse and the adult child could receive monthly DIC.

*4. Creation and Amendment of Title 38, U.S. Code: Veterans Benefits*

In 1958, Congress consolidated, revised, and codified the laws administered by VA, creating a new title 38, Veterans Benefits, in the United States Code. Act of Sept. 2, 1958, Pub. L. No. 85-857, 72 Stat. 1105. Pertinent to the issues on appeal, section 101(4) defined a "child" generally as a person under the age of 18 or between the ages of 18 and 21 who was "pursuing a course of instruction at an approved educational institution." *Id.*, 72 Stat. at 1106. In chapter 11, governing the provision of disability compensation to veterans, section 314 set forth the rates of disability compensation generally payable to veterans with service-connected disabilities, and section 315 provided "[a]dditional compensation" for veterans rated at least 50% disabled who had dependents. *Id.*, 72 Stat. at 1120-22. The additional amounts for a spouse and children ranged from $23 to $62 per month. *Id.*, 72 Stat. at 1121. For example, if the servicemember had a surviving spouse and one adult child attending college, the monthly payment would have been $39.

Additionally, chapter 13 contained the DIC program, while chapter 35 encompassed War Orphans' Educational Assistance. *Id.*, 72 Stat. at 1126-33, 1192-202. Section 502 of the War Orphans' Educational Assistance Act was codified as section 1762 of chapter 35, with the following additions reflected in bold and deletions reflected by strikethrough:

> (a) The commencement of a program of education or special restorative training under this ~~Act~~**chapter** shall be a bar **(1)** to subsequent payments of compensation**, dependency and indemnity compensation,** or pension ~~under any law administered by the Veterans' Administration~~ based on the death of a parent to an eligible person over the age of eighteen by reason of pursuing a course in an educational institution, or **(2)** ~~of~~to increased rates, or additional amounts, of compensation**, dependency and indemnity compensation,** or pension ~~under any law administered by the Veterans' Administration~~ because of such a person.

> (b) No educational assistance allowance or special training allowance shall be paid on behalf of any eligible person under this ~~Act~~**chapter** for any period during which such person is enrolled in and pursuing a course of education or training paid for by the United States under any provision of law other than this ~~Act~~**chapter**, where the payment of an allowance would constitute a duplication of benefits paid from the Federal Treasury to the eligible person or to his parent or guardian in his behalf.

*Id.*, 72 Stat. at 1201; *cf.* Pub. L. No. 84-634, 70 Stat. at 420. The modified language thus specifically referred to the DIC program that was created in August 1956 after the June 1956 enactment of the War Orphans' Educational Assistance Act.

Several years later, Congress broadened the definition of an "eligible person" for purposes of War Orphans' Educational Assistance[7] to include "the child of a person who has a total disability permanent in nature resulting from a service-connected disability arising out of service . . . or who died while a disability so evaluated was in existence." Act of July 7, 1964, Pub. L. No. 88-361, § 1(a), 78 Stat. 297. In the same law, Congress made a corresponding change to section 1762(a), adding the bolded language below:

> The commencement of a program of education or special restorative training under this chapter shall be a bar (1) to subsequent payments of compensation, dependency and indemnity compensation, or pension based on the death of a parent to an eligible person over the age of eighteen by reason of pursuing a course in an educational institution, or (2) to increased rates, or additional amounts of compensation, dependency and indemnity compensation, or pension because of such a person **whether eligibility is based upon the death or upon the total permanent disability of the parent**.

*Id.* § 4, 78 Stat. at 298. Congress also updated the purpose of this program, explaining that it provided assistance to "children whose education would otherwise be impeded or interrupted by reason of the *disability or* death of a parent." 38 U.S.C. § 1701(d) (1964) (emphasis added); *see* Pub. L. No. 88-361, § 1(c), 78 Stat. at 297.

The following year, Congress amended the definition of "child" in 38 U.S.C. § 101 to include children between the ages of 18 and 23 (rather than 21) who are pursuing a course of instruction at an educational institution. Act of Oct. 31, 1965, Pub. L. No. 89-311, § 2, 79 Stat. 1154. Congress also modified section 315, increasing the amounts of "[a]dditional compensation for dependents" listed in the statute, then ranging from $25 to $68 per month, and specifying that "the monthly amount payable on account of each child who has attained the age of [18] years and

---

[7] Congress later included spouses as eligible persons and renamed the program Survivors' and Dependents' Educational Assistance. Veterans' Education and Employment Assistance Act of 1976, Pub. L. No. 94-502, § 309, 90 Stat. 2383; Act of Oct. 23, 1968, Pub. L. No. 90-631, § 2, 82 Stat. 1331, 1332.

who is pursuing a course of instruction at an approved educational institution shall be $40." *Id.* § 2(b), 79 Stat. at 1155.[8]

Then, in 1966, Congress struck subsection (b) from 38 U.S.C. § 1762 and instead created, in chapter 36, governing the administration of educational benefits, a new section 1781, titled "Nonduplication of benefits." Veterans' Readjustment Benefits Act of 1966, Pub. L. No. 89-358, § 3(a)(2), (b), 80 Stat. 12, 20-21. That section provided as follows:

> No educational assistance allowance or special training allowance shall be paid on behalf of any eligible person or veteran under chapter 34[, Veterans' Educational Assistance,] or 35 of this title for any period during which such person or veteran is enrolled in and pursuing a program of education or course paid for by the United States under any provision of law other than such chapters, where the payment of an allowance would constitute a duplication of benefits paid from the Federal Treasury to the eligible person or veteran or to his parent or guardian in his behalf.

*Id.* § 3(b), 80 Stat. at 21.

In 1978, Congress amended section 315 to provide veterans rated at least 30%, rather than 50%, an additional allowance for dependents. Veterans' Disability Compensation and Survivors' Benefits Act of 1978, Pub. L. No. 95-479, § 102(b), 92 Stat. 1560, 1562. Finally, in 1991, Congress renumbered section 1762 as section 3562, section 314 as section 1114, and section 315 as section 1115. Department of Veterans Affairs Codification Act, Pub. L. No. 102-83, § 5, 105 Stat. 378, 406 (1991). Section 3562 has remained unchanged since that time, while section 1115 has undergone changes unrelated to the current dispute.[9] With this understanding of the history of the relevant statutory provisions, the Court turns now to the current language.

### 5. Current Statutes

The two statutes at issue in this matter appear in different chapters of title 38, U.S. Code. Chapter 11, "Compensation for Service-Connected Disability or Death," contains section 1115, which bears the title "Additional compensation for dependents" and provides as follows:

> Any veteran entitled to compensation at the rates provided in section 1114 of this title, and whose disability is rated not less than 30[%], shall be entitled to additional compensation for dependents in the following monthly amounts:

---

[8] A representative from VA explained that college "entails substantial expense" and that "[t]he existing dependency allowance for these children is inadequate" because "the earning capacity of the seriously . . . disabled veteran has usually been so greatly reduced as to preclude the buildup of a fund from which these increased expenses can now be withdrawn." S. REP. NO. 89-861, at 3935 (1965).

[9] For example, Congress has updated the payment amounts listed in the statute. *See* 38 U.S.C. § 1115.

(1) If and while rated totally disabled and--

. . . .

      (B) has a spouse and one or more children, $259 plus $75 for each child in excess of one;

. . . .

      (F) notwithstanding the other provisions of this paragraph, the monthly amount payable on account of each child who has attained the age of eighteen years and who is pursuing a course of instruction at an approved educational institution shall be $240 for a totally disabled veteran and proportionate amounts for partially disabled veterans. . . .

38 U.S.C. § 1115(1)(B), (F).[10]

The second statute, section 3562, "Nonduplication of benefits," appears in chapter 35 and provides the following:

> The commencement of a program of education or special restorative training under this chapter shall be a bar (1) to subsequent payments of compensation, [DIC], or pension based on the death of a parent to an eligible person over the age of eighteen by reason of pursuing a course in an educational institution, or (2) to increased rates, or additional amounts, of compensation, [DIC], or pension because of such a person whether eligibility is based upon the death or upon the total permanent disability of the parent.

38 U.S.C. § 3562. As noted above, Congress established chapter 35, Survivors' and Dependents' Educational Assistance, to provide educational benefits to children and spouses "whose education would otherwise be impeded or interrupted by reason of the disability or death of a parent from a disease or injury incurred or aggravated in the Armed Forces." 38 U.S.C. § 3500. An "eligible person," including the "child of a person who, as a result of qualifying service . . . has a total disability permanent in nature resulting from a service-connected disability," is entitled to receive

---

[10] These statutory amounts are periodically increased by a cost-of-living adjustment. *See, e.g.*, Veterans' Compensation Cost-of-Living Adjustment Act of 2017, Pub. L. No. 115-75, § 2(b)(2), 131 Stat. 1244. During the period relevant here, a veteran rated 30% or higher would have been eligible for at least $24 in additional compensation per month for a child under age 18 and at least $78 per month in additional compensation while the child was older than 18 and attending an approved educational institution, and those amounts for a totally disabled veteran would have been at least $80 and $260, respectively. *See Veterans Compensation Benefits Rate Tables – Effective 12/1/14 and 12/1/15*, U.S. DEP'T OF VETERANS AFFS., https://www.benefits.va.gov/COMPENSATION /resources_comp0114.asp (last updated Dec. 7, 2017).

14

a monthly educational assistance allowance while "pursuing a program of education." 38 U.S.C. § 3501(a)(1)(A)(ii), 3501, 3532.[11]

### D. Statutory Interpretation

The first question in statutory interpretation is always "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. To determine whether Congress's intent is clear, "we begin with the statutory language." *McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *see Williams v. Taylor*, 529 U.S. 420, 431 (2000).

The "plain meaning must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner v. Derwinski*, 1 Vet.App. 584, 586-87 (1991) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994); *see Roper v. Nicholson*, 20 Vet.App. 173, 180 (2006), *aff'd*, 240 F. App'x 422 (Fed. Cir. 2007). "The statute's plain meaning is derived from its text and its structure." *McGee*, 511 F.3d at 1356; *see Gardner*, 1 Vet.App. at 586 ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."). In assessing the language of a statute, courts review the overall statutory scheme "'so that effect is given to all its provisions, so

---

[11] The adult child of a veteran rated 100% disabled would have been eligible to receive at least $1,018 per month in education benefits at the times relevant to this appeal. *See Survivors' and Dependents' (DEA/Chapter 35) Increased Educational Benefit*, U.S. DEP'T OF VETERANS AFFS., https://www.benefits.va.gov/GIBILL/resources /benefits_resources/rates/ch35/ch35rates100114.asp (table for Oct. 1, 2014, to Sept. 30, 2015) (last updated Aug. 15, 2014); *id.* at https://www.benefits.va.gov/GIBILL/resources/benefits_resources/rates/ch35/ch35rates100115.asp (table for Oct. 1, 2015, to Sept. 30, 2016) (last updated Sept. 28, 2015); *id.* at https://www.benefits.va.gov/GIBILL /resources/benefits_resources/rates/ch35/ch35rates100116.asp (table for Oct. 1, 2016, to Sept. 30, 2017) (last updated Sept. 26, 2016); *Education and Training – Rate Tables – Survivors' and Dependents' Educational Assistance Program (DEA/Chapter 35)*, U.S. DEP'T OF VETERANS AFFS., https://www.benefits.va.gov/gibill/resources/benefits_resources /rate_tables.asp (tables for Oct. 1, 2017, to Sept. 30, 2023) (last updated Apr. 3, 2023). The Court notes, however, that the appellant's daughter qualified for chapter 35 benefits based on the appellant's service and disability status as well as that of her mother, also a disabled veteran. *See* Secretary's Oct. 15, 2021, Response to Sept. 8, 2021, Court Order, at 2, 24-25; *see also Osman v. Peake*, 22 Vet.App. 252, 260 (2008) (holding that section 3562 "permit[s] a child to derive 'eligible person' status from each parent when each parent has a total and permanent disability resulting from a service-connected disability"). The appellant's daughter opted to use those benefits concurrently, receiving twice the amount of benefits per month, but for only 22.5 months, rather than 45 months. *See* Secretary's Oct. 15, 2021, Response to Sept. 8, 2021, Court Order, at 24-26; 38 U.S.C. § 3511(a)(1)(A) (providing for "an aggregate period not in excess of 45 months" for educational assistance "in the case of a person who first enrolls in a program of education using such entitlement before August 1, 2018," as the appellant's daughter did here).

that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.'" *Roper*, 20 Vet.App. at 178 (quoting 2A NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46:06 (6th ed. 2000)). The interpretation of a statute is a question of law that the Court reviews de novo, without deference to the Board's interpretation. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc).

In the instant case, the Court's task is to determine whether section 3562 forever bars a totally disabled veteran from claiming (or reclaiming) an additional allowance for a dependent under section 1115(1)(F) after the dependent has begun using DEA benefits. Resolving this matter requires the Court to consider (1) what triggers the bar to payment in section 3562, (2) whether the bar affects payments to the veteran or to the child, (3) what benefits are barred, and (4) under what circumstances, if any, the bar may be lifted. The Court will address each of those matters in turn.

*1. What Triggers the Bar?*

The first part of section 3562 provides that "[t]he commencement of a program of education or special restorative training[12] under this chapter shall be a bar," and it is followed by two subsections that, as explained below, outline who is affected and what benefits are affected. It is, thus, only the words preceding "shall be a bar" that identify the triggering event.

As for what those words convey, although Congress did not define "commencement" in title 38, the ordinary meaning of "commence" is "begin," "to enter upon," or "to have or make a beginning." MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/ commence (last visited Apr. 21, 2023); *see Prokarym v. McDonald*, 27 Vet.App. 307, 310 (2015) ("In the absence of an express definition, words are given their ordinary meaning."); *Nielson v. Shinseki*, 23 Vet.App. 56, 59 (2009) ("The plain meaning of a term 'begins with its ordinary, contemporary, common meaning,'" and "[i]t is commonplace to consult dictionaries to ascertain a term's ordinary meaning." (quoting *McGee*, 511 F.3d at 1356)), *aff'd*, 607 F.3d 802 (Fed. Cir. 2010). It is also instructive that, in other contexts in title 38, Congress has used the term "commencement" to refer to the beginning, *see, e.g.*, 38 U.S.C. §§ 7616(b), 7674(b), 7699A(b),

---

[12] "[S]pecial restorative training" refers to "training furnished under subchapter V of this chapter," 38 U.S.C. § 3501(a)(7), the purpose of which is "to overcome, or lessen, the effects of a manifest physical or mental disability which would handicap an eligible person . . . in the pursuit of a program of education," 38 U.S.C. § 3540. This type of training is not at issue in the current case.

and the Court has interpreted the term "commence" to mean initiate, *see, e.g.*, *Owings v. Brown*, 8 Vet.App. 17, 22 (1995), *aff'd*, 86 F.3d 1178 (Fed. Cir. 1996) (table).

Next, the phrase "under this chapter" necessarily refers to the chapter in which it appears: Chapter 35 Survivors' and Dependents' Educational Assistance. And chapter 35 defines "program of education" as "any curriculum . . . pursued at an educational institution which is generally accepted as necessary to fulfill the requirements for the attainment of a predetermined . . . educational, professional, or vocational objective." 38 U.S.C. § 3501(a)(5). This definition introduces another relevant term, "educational institution," which is defined in chapter 35 as "any public or private . . . institution . . . [that] furnishes education at the secondary school level or above."[13] 38 U.S.C. § 3501(a)(6).

To initiate such a program of education under chapter 35, an individual must be an "eligible person," 38 U.S.C. § 3501(a)(1),[14] which originally included the children of certain military personnel who died as a result of service and was expanded to include children and spouses of servicemembers who either are totally disabled or die as a result of service, *supra* at 12 and note 7. Because, as discussed below, the student described in section 3562 is an adult child, not the spouse or surviving spouse of a veteran, it is thus clear that the section 3562 bar is triggered when such an adult child begins a curriculum leading to an educational, professional, or vocational objective at a secondary school.

### 2. To Whom Does the Bar Apply?

After establishing when the bar to payment is triggered, section 3562 identifies who is subject to the bar. Subsection (1) prohibits "payments . . . *to* an eligible person over the age of eighteen by reason of pursuing a course in an educational institution," while subsection (2) proscribes payments made "*because of* such a person." 38 U.S.C. § 3562(1), (2) (emphases

---

[13] As examples, the statute includes "secondary school, vocational school, correspondence school, business school, junior college, teachers' college, college, normal school, professional school, university, or scientific or technical institution." 38 U.S.C. § 3501(a)(6). For ease of reference, the Court will refer to these institutions as secondary schools.

[14] Specifically, chapter 35 defines "eligible person" to include a "child of a person who, as a result of qualifying service," either "died of a service-connected disability" or "has a total disability permanent in nature resulting from a service-connected disability, or who died while a disability so evaluated was in existence." 38 U.S.C. § 3501(a)(1)(A)(i), (ii). Relevant to the circumstances of this case, VA broadly defines "child" as an unmarried person "who, after attaining the age of [18] years and until completion of education or training (but not after attaining the age of [23] years), is pursuing a course of instruction at an approved educational institution." 38 U.S.C. § 101(4)(A)(ii). As noted above, however, for purposes of chapter 35, "[t]he term 'child' includes individuals who are married and individuals who are above the age of [23] years." 38 U.S.C. § 3501(a)(2).

added). Given that "eligible person" is defined in chapter 35 "[f]or purposes of this chapter," 38 U.S.C. § 3501(a), it is that definition that informs who is described in subsection 3562(1). *See Wilson v. McDonough*, 35 Vet.App. 75, 78 (2021) (interpreting a phrase according to the "most natural reading").

As noted above, an "eligible person" under chapter 35 generally would include "[a] child," "surviving spouse," or "spouse" of a person who died from a service-connected disability, has a permanent total disability as a result of service, or died while rated totally and permanently disabled. 38 U.S.C. § 3501(a)(1). But, subsection 3562(1) describes only a subset of those family members—specifically, the individual must be "over the age of eighteen" and "pursuing a course in an educational institution." That language tracks the definition in section 101 of an adult child who is "pursuing a course of instruction at an approved educational institution." 38 U.S.C. § 101(4); *see* 38 U.S.C. § 3501(a); *see also Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("[T]here is a presumption that a given term is used to mean the same thing throughout a statute, a presumption surely at its most vigorous when a term is repeated within a given sentence." (citation omitted)); *Boyer v. Derwinski*, 1 Vet.App. 531, 534 (1991) ("'When the same . . . phrase is used in different parts of a statute, we presume that the . . . phrase has the same meaning throughout.'" (quoting *S & M Inv. Co. v. Tahoe Reg'l Plan. Agency*, 911 F.2d 324, 328 (9th Cir. 1990) (citations omitted)). Moreover, when this language—prohibiting "payments . . . to an eligible person"—was enacted, 38 U.S.C. § 3562(1), only children were eligible for DEA and, as detailed above, this portion of section 3562 has not been substantively changed since that time. *See supra* at 7-13. All of this leads to the conclusion that subsection (1) describes an adult child of a veteran and bars certain payments "to" that adult child.[15] 38 U.S.C. § 3562(1).

On the other hand, the bar in section 3562(2) is directed to someone who could receive increased or additional payments "*because of* such a person." 38 U.S.C. § 3562(2) (emphasis added). The prepositional phase "because of" means "by reason of" or "on account of," indicating that the bar applies to an individual who would otherwise receive payments by reason of his or her relationship to such person. MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/because of (last visited May 1, 2023). "[S]uch a person" may reasonably be read to mean only the "eligible person" previously referred to in subsection (1): the veteran's

---

[15] This reading is further buttressed by the language in subsection (1) barring payments "based on the death of a *parent*," which necessarily means payments to a child. 38 U.S.C. § 3562(1) (emphasis added).

18

adult child, *see* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/such (defining "such" as "having a quality already or just specified—used to avoid repetition of a descriptive term" or "previously characterized or specified") (last visited May 1, 2023); *see also Gardner*, 513 U.S. at 118, and this is so despite the reference in subsection (1) to a second person—a deceased "parent," 38 U.S.C. § 3562.

As an initial matter, Congress twice used the word "parent" in section 3562:

> The commencement of a program of education . . . shall be a bar (1) to subsequent payments . . . based on the death of *a parent* to an eligible person . . . or (2) to . . . amounts . . . because of such a person whether eligibility is based upon the death or upon the total permanent disability of *the parent*.

38 U.S.C. § 3562 (emphases added). It would be contrary to the natural reading of the statute to assume that Congress also referred to a parent by a different term—"such . . . person"—within the same sentence. *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 456 (2012) ("We generally seek to respect Congress' decision to use different terms to describe different categories of people or things." (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004))); *see also Gardner*, 513 U.S. at 118 ("[T]here is a presumption that a given term is used to mean the same thing throughout a statute, a presumption surely at its most vigorous when a term is repeated within a given sentence." (citation omitted)); *Boyer*, 1 Vet.App. at 534. This reading is further supported by the language in subsection (2) indicating that the eligibility of "such a person" for DEA could be based "upon the death or upon the total permanent disability *of the parent*." 38 U.S.C. § 3562(2) (emphasis added).

It is axiomatic that only a *child* could derive eligibility from a *parent*. *See* 38 U.S.C. § 3501(a)(1)(A), (C). Indeed, the phrase "upon the death or upon the total permanent disability of the parent" was added to section 3562(2) at the same time that Congress expanded the DEA program to include "*the child* of a person who has a total disability permanent in nature resulting from a service-connected disability arising out of service . . . or who died while a disability so evaluated was in existence." Pub. L. No. 88-361, § 1(a), 78 Stat. at 297 (emphasis added); *see supra* at 12; *see also* 38 U.S.C. § 3501(a)(1)(A)(ii). Accordingly, the conforming change Congress made to section 3562(2) at that time also describes such a child. *See Boyer*, 1 Vet.App. at 534 (stating that the presumption that words used in different parts of a statute have the same meaning "would seem especially so when the words in question appear in closely related sections of the law and . . . were added to the law by the same statute").

19

In sum, subsection (2) applies to someone otherwise eligible for payments by reason of his or her relationship to an adult child. In that regard, it is instructive that title 38 contains numerous provisions authorizing payments to a veteran or to a surviving spouse if he or she has an adult child attending an educational institution. *See, e.g.*, 38 U.S.C. §§ 1115(1)(F), 1314(c). It follows that those parents, including a veteran, may be affected by the bar in subsection (2).

Given this discussion, the Court finds no merit in the appellant's argument that the section 3562 bar applies only to the "eligible person"—in other words, to the adult child—rather than to the veteran. *See* Appellant's Br. at 8-10; Reply Br. at 5-9. Instead, the statute is clear that subsection (1) prohibits certain payments to adult children, and subsection (2) prohibits certain payments to those who receive payments because of their relationship to that adult child, including a veteran parent. Moreover, because the appellant's arguments that § 21.3023 is "inconsistent with [section] 3562 as well as . . . [section] 1115(1)(F)" and that the Board misapplied that regulation both rest on the incorrect notion that the section 3562 bar to payments applies only to the eligible person, those contentions also must fail. Appellant's Br. at 13; *see id.* at 13-14; Reply Br. at 6-7.

### 3. What Benefits Are Barred?

Having established when the bar in section 3562 is triggered—when an adult child begins a program of education at a secondary school—and, as relevant here, to whom it applies—a veteran parent of that child—the Court turns to the question of what benefits are barred. Subsection 3562(1) prohibits payment of "compensation, [DIC], or pension based on the death of a parent" to an adult child, and subsection (2) bars "increased rates, or additional amounts, of compensation, [DIC], or pension" because of the adult child.[16] Congress defined compensation, in part, as "a monthly payment made by the Secretary to a veteran because of service-connected disability, or to a surviving spouse, child, or parent of a veteran because of the service-connected death of the veteran occurring before January 1, 1957." 38 U.S.C. § 101(13). As reflected above, when Congress established DIC in 1956, payments under that program to a "widow, children, [or] dependent parents" were conditioned on the death of the servicemember occurring on or after January 1, 1957. Pub. L. No. 84-881, § 201, 70 Stat. at 862. Prior to that time, an adult child could receive "death compensation" while attending an approved school. *May 1956 Hearing* at 24-25 (statement of T. F. Daley, VA Associate General Counsel for Legislation). Based on that, it is clear

---

[16] Neither party contends that DIC or pension are at issue here, and the Court will thus not address the meaning of those portions of the statute.

that "compensation" in subsection (1) refers to payments made directly to the adult child under programs in effect prior to the creation of the DIC program.

As explained above, the bar in subsection (2) applies to a veteran parent who may receive payments by reason of having an adult child. Thus, it is the first clause of the definition of compensation that is pertinent to subsection (2)—"a monthly payment made by the Secretary *to a veteran* because of service-connected disability." 38 U.S.C. § 101(13) (emphasis added). That means subsection (2) bars the veteran from receiving "increased rates" or "additional amounts" of monthly payments of disability compensation that would otherwise be paid because of his or her adult child.

Those payments of disability compensation would necessarily be authorized by chapter 11, which governs "Compensation for Service-Connected Disability." Within that chapter, section 1114 sets forth the monthly "[r]ates" of disability compensation for veterans with disabilities rated between 10% and 100%, and section 1115, the second statute at issue in this case, details the monthly amounts of "[*a*]*dditional* compensation" that may be paid to a veteran "whose disability is rated not less than 30[%]" and who has a spouse, child, or dependent parent. 38 U.S.C. § 1115(1) (emphasis added). That provision, along with the history outlined above, reflects that Congress created a payment scheme in which the monthly disability compensation for a veteran with an adult child attending a secondary school is higher than when the child is a minor. *See* Pub. L. No. 89-311, § 2(b), 79 Stat. at 1155; *see also supra* note 10. Specifically, the additional allowance for a totally disabled veteran with a minor child is approximately $100, 38 U.S.C. § 1115(B), (C), while the additional "monthly amount payable *on account of* each child who has attained the age of [18] years and who is pursuing a course of instruction at an approved educational institution shall be $240 for a totally disabled veteran," 38 U.S.C. § 1115(1)(F) (emphasis added).[17]

This means that, although a veteran parent may receive increased disability compensation for any dependent child, subsection (1)(F) explicitly provides an additional allowance *because of* an adult child attending an educational institution. CAMBRIDGE ADVANCED LEARNER'S DICTIONARY & THESAURUS, https://dictionary.cambridge.org/us/dictionary/english/on-account-of (last visited May 1, 2023) (defining "on account of" as "because of"). Returning, then, to section

---

[17] Section 1115 directs that the statutory amounts be adjusted proportionately for veterans who are at least 30% disabled but not totally disabled. 38 U.S.C. § 1115(1)(E), (F); 38 U.S.C. § 1115(2). Also, these statutory amounts are periodically increased by a cost-of-living adjustment. *Supra* note 10.

3562(2), which bars "additional amounts" or "increased rates" of disability compensation "because of" an adult child attending an educational institution, it is clear that the bar applies to payments under section 1115(1)(F). *See Boyer*, 1 Vet.App. at 534.

As a result, the Court finds no merit in the appellant's argument that neither section 3562 nor its implementing regulation, § 21.3023, impacts entitlement to benefits under section 1115(1)(F). *See* Appellant's Br. at 5-6, 12-14; Reply Br. at 1-2. Although the appellant points out that subsection (1)(F) provides that veterans "shall" be entitled to an additional allowance for an adult child "pursuing a course of instruction at an approved educational institution," Appellant's Br. at 6, the statutory scheme must be read as a whole. *See Roper*, 20 Vet.App. at 178. Doing so reflects that the general authority for paying VA benefits is found in chapter 11, but title 38 elsewhere describes limits on the payment of those benefits. *See, e.g.*, *Buffington v. Wilkie*, 31 Vet.App. 293, 299 (2019) (explaining that, although 38 U.S.C. § 1110 provides that VA "will pay" compensation to certain veterans, Congress, in 38 U.S.C. § 5304, has prohibited some members of the uniformed services from receiving those benefits), *aff'd sub nom. Buffington v. McDonough*, 7 F.4th 1361 (Fed. Cir. 2021); *Gurley v. McDonough*, 23 F.4th 1353, 1355 (Fed. Cir. 2022) (explaining that payments under section 1114 "had to be reduced" pursuant to 38 U.S.C. § 5313(a)(1) while the veteran was incarcerated). And the Court has concluded that section 3562 is one such limiting provision.

The appellant also briefly asserts that his daughter's DEA election is "not a bar" to his receipt of benefits but rather is "the statutory predicate for his entitlement" under section 1115. Appellant's Br. at 12; *see* Reply Br. at 4-5. But nothing in section 1115 provides that an adult child's election or receipt of DEA benefits is a predicate for entitlement to an additional allowance under that section, and courts "ordinarily resist reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997). Although section 1115(1)(F) conditions the additional allowance on the adult child "pursuing a course of instruction at an approved educational institution," it does not follow that the adult child *must* be using DEA benefits. Indeed, the additional allowance described in subsection (1)(F) is potentially available to veterans rated 30% disabled or higher, while DEA is available only if the veteran is deceased or permanently and totally disabled. In other words, subsection (1)(F) covers a broader group of children than those eligible for DEA. Also, subsection (1)(F) requires the adult child to be "pursuing a course of instruction at an approved educational institution," and DEA requires

enrollment in a "program of education" as defined in chapter 35. *See* Secretary's Br. at 13-14 (comparing "course of instruction" in section 1115(1)(F) with "program of education" in section 3501(a)). In other words, a DEA election is *not* "the statutory predicate," Appellant's Br. at 12, for the appellant's entitlement to benefits under section 1115(1)(F). The appellant's argument to the contrary is unpersuasive and does not undermine the Court's conclusion that the bar in section 3562(2) applies to payments under section 1115(1)(F).

### *4. May the Bar Be Lifted?*

Based on the above, the section 3562(2) bar to payments (1) is triggered when an adult child begins a curriculum leading to an educational, professional, or vocational objective at a secondary school, (2) applies to a veteran parent receiving payments because he or she has an adult child attending an educational institution, and (3) prohibits the payment of "additional" monthly compensation to a disabled veteran under section 1115(1)(F). The final question for the Court is whether there are any circumstances under which the bar may be lifted.

### a. Text, Context, and Purpose

Although section 3562 sets forth the criteria for triggering the bar, it does not explicitly contain any criteria for how and when it may be lifted. That, however, is not the end of the inquiry because the specific words Congress used, the context, and the purpose of the provision could nevertheless answer those questions. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (explaining that, to discern the plain meaning of a statute, the Court may look to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole"); *Smith v. United States*, 508 U.S. 223, 229 (1993) ("Language . . . cannot be interpreted apart from context. The meaning of a word that appears ambiguous if viewed in isolation may become clear when the word is analyzed in light of the terms that surround it."); *Degmetich v. Brown*, 104 F.3d 1328, 1332 (Fed. Cir. 1997) ("[W]hen interpreting statutes, the court is required to look at the context and provisions of the law as a whole."). In that regard, the first word in section 3562 containing a temporal requirement is "commencement," which, as discussed above, means beginning and establishes that the bar is triggered when an adult child begins pursuing a program of education at a secondary school. The word "commencement," alone or in context, does not shed light on whether circumstances arising *after* a program of education has begun may affect the bar.

By contrast, Congress has elsewhere provided both beginning and end dates for limitations on payments. *See* 38 U.S.C. § 5313(a)(1) (explaining that the limitation on payments to incarcerated individuals "begin[s] on the sixty-first day of . . . incarceration" and "end[s] on the day such incarceration ends"); *see also O'Brien v. Wilkie*, 30 Vet.App. 21, 27-28 (2018) (concluding that use of a different definition of "child" for Social Security Administration purposes reflected that "Congress knows how to include children such as the appellant's grandson in the definition of 'child' but has not done so for VA purposes"), *aff'd*, 948 F.3d 1339 (Fed. Cir. 2020). Congress knows how to establish a temporary bar to benefits, but Congress chose not to include any language in section 3562 reflecting that the bar ever lifts. The Court will not read into the statute any delimiting date or event for that bar. *See Bates*, 522 U.S. at 29.

Further, subsection (1) bars "subsequent payments"—that is, payments that would otherwise be payable *after* the adult child begins an educational program—but it contains no language indicating when, if ever, payments could resume. And, although subsection (2) does not contain any temporal words, the context makes clear that the bar to additional compensation is tied to the time when an adult child "commence[s]" a program of education at a secondary school. The Court also finds instructive that continued pursuit of the educational program is required for the adult child to remain a "child" for VA purposes, *see* 38 U.S.C. § 101(4)(A) (defining a child as "a person . . . who . . . *is pursuing* a course of instruction at an approved educational institution" (emphasis added)), yet section 3562 contains no language suggesting that the bar to payment only remains in place while such pursuit continues. All of this suggests that, once the bar to payment in section 3562 is triggered, it is permanent.

That Congress meant to discontinue any additional monthly payments under section 1115(1)(F) to the veteran parent once the child begins using the more generous DEA benefits available under chapter 35 is also consistent with the overlapping purposes of section 1115(1)(F) and DEA. *See Casey*, 31 Vet.App. at 265 (citing *Hughes*, 138 S. Ct. at 1774, for the proposition that considering the purposes behind a statutory scheme is a useful check on a court's interpretation of a specific statutory provision). As described above, for a veteran with a disability rated at least 30%, section 1115(1)(F) provides a higher level of compensation if the veteran has an adult child attending an educational institution than if the veteran has a minor child, and DEA provides an even higher level of benefits for a narrow subset of those students: those who are adult children of a totally and permanently disabled or deceased veteran. *See supra* at 7-13. In other words, under

the system that Congress has established, once the government begins assisting *an adult child* in furthering his or her education through the DEA program, the government ceases to assist *a veteran* in assisting that adult child in pursuing an educational program.[18]

### b. Meaning of Nonduplication

Finally, the Court is not convinced that Congress's use of the phrase "[n]onduplication of benefits" in the title of section 3562 undermines the above understanding of the plain meaning of that section. *See generally Brotherhood of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947) ("For interpretative purposes, the[ title of a statute and the heading of a section] are . . . . but tools available for the resolution of a doubt. . . . [T]hey cannot undo or limit that which the text makes plain." (citations omitted)). Because Congress did not define the term "nonduplication,"[19] the Court will look first to dictionary definitions to discern the term's "ordinary meaning." *Nielsen*, 23 Vet.App. at 59; *see Prokarym*, 27 Vet.App. at 310. "Duplication" derives from the word "duplicate," which, as a noun, has several meanings, including "something that is like another thing in content . . . but is not derived from the same source or made in the same manner." MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/ duplicate (last visited May 2, 2023). As an adjective, "duplicate" may mean "consisting of or existing in two corresponding or identical parts or examples." *Id.* Finally, as a verb, it could mean "to make double or twofold." *Id.*

These definitions all describe things that are alike. Understood in that way, then, "[n]onduplication of benefits" means that the payment of *similar kinds of benefits* is prohibited, but, as the definitions of "duplicate" reveal, the phrase does not contain a temporal component— that is, it does not explain *when* the bar to nonduplication of benefits may end, if at all. Moreover,

---

[18] This understanding is further bolstered because, as reflected above, Congress considered but rejected language that would have tied the section 3562 bar to only a "period during which an educational assistance allowance is payable under this Act." *March 1956 Hearings* at 3252; *see Hatfield v. McDonough*, 36 Vet.App. 97, 109 n.72 (2023) (citing *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 18 (1979) (holding that Congress's "intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment")). The VA representative who testified at that time explained that the proposed language would require VA to take a "number of amendatory actions" to "discontinu[e] . . . additional compensation during periods when an educational assistance allowance is payable" and to "reinstat[e] . . . such compensation benefits during periods when training is temporarily interrupted." *March 1956 Hearings* at 3228.

[19] In the decision on appeal, the Board acknowledged the appellant's argument that "[n]onduplication" in section 3562 essentially means "concurrent" and therefore only bars the *simultaneous* payment of chapter 35 benefits and dependent compensation. R. at 5; *see* R. at 454-53. The Board found, however, that, although section 3562 and § 21.3023 both "include the [word] 'nonduplication' in their titles . . . , the text of those respective bodies of law [is] clear that an election of DEA benefits is a bar to subsequent dependency compensation." R. at 5.

in the other instances in which Congress has used the word "nonduplication" in title 38, the word has also not been imbued with a temporal meaning. *See, e.g.*, 38 U.S.C. §§ 1834 (titled "Nonduplication of benefits" and providing that "[a]n individual may only be provided one program of vocational training under this chapter"), 4110B (titled "Coordination and nonduplication" and requiring coordination between state entities and VA to avoid duplication of activities); *see also Return Mail, Inc. v. U.S. Postal Serv.*, 139 S. Ct. 1853, 1863 (2019) ("[I]t is often true that when Congress uses a word to mean one thing in one part of the statute, it will mean the same thing elsewhere in the statute.").

Rather, a review of title 38 suggests that, when Congress intends to bar only the *simultaneous* receipt of similar types of benefits, it does so explicitly. *See O'Brien*, 30 Vet.App. at 27-28. For example, in section 3322, Congress banned an individual from "concurrently" receiving educational assistance under more than one education program. 38 U.S.C. § 3322(e), (g); *see* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/concurrent ("concurrent" means "operating or occurring at the same time" (last visited May 1, 2023)). Similarly, in other provisions that prohibit "duplication" of benefits, Congress has specified whether the bar operates concurrently. *See, e.g.*, 38 U.S.C. §§ 3033(a)(1) (prohibiting an individual from "reciev[ing] assistance under two or more [education] programs concurrently"), 5304 (providing that "not more than one award of pension, compensation, emergency officers', regular, or reserve retirement pay, or initial award of naval pension . . . . shall be made concurrently to any person based on such person's own service or concurrently based on the service of any other person").[20]

Of note, section 3322 provides compelling support for the conclusion that, if Congress intended for section 3562 to create only a simultaneous bar, it would have included words to that effect. Section 3322 contains a bar nearly identical to that found in section 3562—specifically, at the time an eligible person commences a qualifying education program under chapter 33, subsection 3322(f)(1) bars "[s]ubsequent payments" to the eligible person, and subsection 3322(f)(2) bars increased rates or additional amounts of compensation because of the eligible person. Because Congress tied the bar in subsection 3322(f) to "commencement of a program,"

---

[20] There are also instances of Congress expressly prohibiting other concurrent benefit payments in title 38. *See* 38 U.S.C. §§ 1804(e)(1) ("A child who is pursuing a program of vocational training . . . and is also eligible for assistance under . . . chapter 35 . . . may not receive assistance under both such programs concurrently."), 3681(b) (providing that "[n]o person may receive benefits concurrently under two or more" enumerated provisions of law).

while in other parts of that same section Congress prohibited "receiv[ing] assistance under [specified] provisions *concurrently*," 38 U.S.C. § 3222(e), (g) (emphasis added), the Court presumes that Congress intended those phrases to have different meanings. This is further supported by the title of subsection 3322(f),[21] which refers to a "[b]ar to receipt of compensation and pension," 38 U.S.C. § 3322(f), whereas other subsections are captioned a "[b]ar to *concurrent* receipt . . . of benefits," 38 U.S.C. § 3322(e), (g) (emphasis added). Given all of this, the Court concludes that the bar to additional amounts of compensation in section 3562(2) is not limited to the concurrent payment of those additional benefits while the adult child is receiving DEA. In other words, even after the adult child exhausts his or her DEA benefits, the bar remains in place.

*5. Summary*

To summarize the above statutory interpretation, the Court concludes that the section 3562(2) bar to payments (1) is triggered when an adult child begins an educational program intended to lead to an educational, professional, or vocational objective at a secondary school, (2) applies to a permanently and totally disabled veteran parent who may otherwise receive payments because his or her adult child is attending an educational institution, (3) prohibits the payment of "additional" monthly compensation to the veteran parent under section 1115(1)(F), and (4) is permanent. The Court will next apply its interpretation of section 3562 to the facts of the appellant's case.

E. Application

As noted above, the Board and the parties agree that the appellant's daughter was a "child" for VA purposes during the period at issue in this matter, *see* R. at 4; Secretary's Br. at 9, and that she began a program of education in August 2015, *see* R. at 3; Appellant's Br. at 6; Secretary's Br. at 2; *see also* R. at 5881, 6072. The Board also noted the appellant's contention that his daughter had exhausted her DEA benefits before she completed her education program and before she reached age 23. R. at 4, 5. The Board then determined that the appellant was not entitled to reinstatement of an additional allowance for dependents under section 1115(1)(F), even for periods after his daughter exhausted her DEA benefits, because his daughter's election of DEA triggered a permanent bar to benefits under section 3562(2). R. at 5 (citing 38 C.F.R. § 21.3023(a)(1)

---

[21] Subsection (f) of section 3322 is titled "Bar to receipt of compensation and pension and Marine Gunnery Sergeant John David Fry Scholarship Assistance."

(2019)), 6. In so concluding, the Board rejected the appellant's argument that section 3562 prohibits only simultaneous payments of DEA and compensation under section 1115(1)(F). R. at 5-6.

As for whether the bar in this case was triggered, the appellant summarily contends that the record does not reflect that his daughter submitted a DEA election in writing, as required by 38 C.F.R. § 21.3023(c). Appellant's Br. at 15. Accordingly, he maintains that "[t]he Board conjured up an election which was never made[, and i]t was VA which unlawfully terminated [the] dependent benefits to which he was entitled under [section] 1115." *Id.* In making this argument, the appellant does not address documents filed by the Secretary reflecting his daughter's eligibility for and use of DEA benefits. *See* Secretary's Oct. 15, 2021, Response to Sept. 8, 2021, Court Order, Attachment. Further, the Secretary disputed this argument in his brief, averring that it is "inconsistent with the record," Secretary's Br. at 16 (citing R. at 453, 6072), as well as "inconsistent with the arguments . . . advanced in the [appellant's] opening brief," *id.*, and the appellant did not reiterate this argument in his reply brief, nor did he respond to the Secretary's rebuttal, *see generally* Reply Br. at 1-11. The Court will not address this matter further, *see Locklear*, 20 Vet.App. at 416; *Cromer v. Nicholson*, 19 Vet.App. 215, 219 (2005) (per curiam order) (declining to address an argument "in the absence of the necessary factual predicate"), *aff'd*, 455 F.3d 1346 (Fed. Cir. 2006), except to note that the appellant, in his opening brief, asserted that the Court is bound by the Board's favorable factual finding that his daughter "'received [c]hapter 35 [DEA] from August 2015 to May 2018,'" Appellant's Br. at 6 (quoting R. at 3). Accordingly, the Court cannot conclude that the appellant has demonstrated error in the Board finding in that regard.

Further, to the extent that the appellant contends that VA "unlawfully terminated" his dependent compensation under section 1115(1)(F), Appellant's Br. at 15, the Court notes that the RO terminated that compensation in a February 2016 decision, *see* R. at 5921-24. The appellant does not cite, and the Court's review of the record does not reveal, any evidence that the appellant appealed that determination. *See* R. at 5923 (advising the appellant what to do if he disagreed with the decision); *see also* R. at 3-4 (explaining that the current appeal stems from a November 2018 decision declining to add the appellant's daughter back to his compensation award). The Court will not address this argument further. *See Locklear*, 20 Vet.App. at 416.

Regarding who may be affected by the section 3562 bar, the appellant argues that the Board should have analyzed his case under section 3562(1), which would bar payments to his daughter

but not to him. *See* Appellant's Br. at 7-10; Reply Br. at 5-8. However, as explained above, subsection (1) prohibits certain payments to adult children, and subsection (2) prohibits certain payments to those who receive payments because of their relationship to that adult child, including a veteran parent. Because the appellant's dispute does not involve the withholding of payment to a child or spouse, but the withholding of payment to him—a permanently and totally disabled veteran—he has not demonstrated that the Board erred in analyzing this matter under section 3562(2).

Turning to what benefits are barred by subsection (2), the appellant argues that section 1115(1)(F) is independent from and unaffected by the bar in section 3562, and thus the Board erroneously relied on § 21.3023 to deny his request to reinstate an additional allowance for dependents. Appellant's Br. at 10-15. However, the Court rejected those arguments above and therefore concludes that the appellant has not shown error in the Board's determination that section 3562(2) bars payments under section 1115(1)(F).

Finally, as for whether the bar is permanent, the appellant avers that the Board's finding that his daughter received DEA from 2015 to 2018 did not support its conclusion that he may not receive additional benefits under section 1115(1)(F). Appellant's Br. at 5. Rather, he contends that he was entitled to section 1115 compensation while his daughter "had not completed her education, had not attained the age of [23], and was pursuing a course of instruction at an approved educational institution." *Id.* at 7. However, because the Court finds unpersuasive the appellant's averments that the bar to payments in section 3562 was not triggered, that any bar does not apply to him, and that the bar does not impact benefits under section 1115(1)(F), he has not shown that the Board erred in finding that the bar to him receiving an additional allowance for dependents had been triggered. And, because the Board found, and the Court on de novo review agrees, that the section 3562 bar is permanent, the appellant has not demonstrated that the Board erred in denying benefits under section 1115(1)(F) for any time after his daughter exhausted her DEA benefits but was still attending an educational institution. Accordingly, the Court will affirm the Board's decision denying an additional allowance for dependents to the appellant.

### III. CONCLUSION

After consideration of the parties' pleadings and a review of the record, the Board's March 5, 2020, decision is AFFIRMED.